FORESTERS OF AMERICA v. W. H. HOLLIS.

No. 13,508.  (78 Pac. 160.)

SYLLABUS BY THE COURT.

1. BENEFICIARY ASSOCIATIONS — *Payment of Dues — Forfeiture.* Where a member of a beneficiary association offers to pay dues assessed against him, and is ready and willing to pay to the officer whose duty it is to receive them, and such officer, doubting his power in the premises, refuses to accept the offered payment, the association cannot base a forfeiture of the promised benefit on the non-payment of such dues.

2. ———— *Payment According to Custom at Variance with By-laws Prevents Forfeiture.* Nor will such association be permitted to assert a forfeiture because assessments were not paid at the times stated in the printed by-laws, where, by the adoption of a custom, or the course of its conduct, it has led the insured members honestly to believe that the assessments may be paid, and will be received, at times other than those specified in the printed rules.

3. ———— *Beneficiary Need Not Allege an Insurable Interest.* In an action to recover insurance procured by a member of an association on his own life for the benefit of another it is not necessary for the beneficiary to allege that he had an insurable

interest in the life of the insured, and if the association relies on the defense of no insurable interest it devolves on it to plead and prove it.

Error from Saline district court; R. F. THOMPSON, judge. Opinion filed October 8, 1904. Affirmed.

*Littick & Littick*, and *Thomas L. Bond*, for plaintiff in error.

*C. W. Burch*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J. : On March 17, 1880, John C. Estes united with the Foresters of America, and also became a member of what is known in that order as the "endowment fund." The endowment certificate first issued to him was for $1000, and his wife and heirs were designated as beneficiaries. This relationship was continued for about fifteen years, and until about May 9, 1895, when, under the laws of the order, he surrendered the first certificate and obtained a new one for the same amount, in which W. H. Hollis, a stepson, was named as beneficiary. All assessments for the endowment fund were paid until Estes's death, which occurred on July 27, 1901. Payment of the promised benefit was refused by the order because of the claim that Estes was not in good standing as a member of the order when he died. In the action brought by Hollis to recover the benefit the order alleged that Estes had not paid the assessments and taxes levied by the order for several months preceding his death, and because of non-compliance with requirements in this respect he was not in good standing ; that therefore no liability arose on the certificate issued to him. As already stated, every assessment made for the endowment fund was paid, but the gen-

eral dues payable to the subordinate court, and amounting to eight dollars per year, were not actually paid after March 31, 1901. The plaintiff below pleaded and proved, as an excuse for the non-payment of the dues for the three months preceding the death of Estes, that there was a well-established custom in the Salina court, or lodge, to which Estes belonged, of paying these dues quarterly, and at any time during the quarter; and, further, that Estes tried to pay the dues to the local financial secretary, whose duty it was to receive them, and that officer refused to receive them.

It appears that the organization is composed of the supreme court of America, the grand court of the state, and the subordinate courts throughout the state, and that these three are one and the same association, deriving their power and authority from the supreme court of the order. The financial secretary of the local court is not only an officer of that court but he acts for the association as well. He collects and forwards the assessments from the endowment fund to the supreme secretary, and he is the officer to whom all other dues and assessments are to be paid.

In the early part of 1901 there was a lack of interest in the Salina court; the meetings were poorly attended, and it became a question with the members of that court whether they could maintain the organization. Correspondence was had with the superior officers, and on May 4, 1901, the executive committee of the grand court attempted to dissolve Salina court, and to forfeit its charter, rituals and effects to the grand court. After that time E. S. Swanson, the financial secretary, was in doubt as to whether he could collect dues and assessments, and when the general dues for Estes were offered to him he declined to receive them, stating that he did not know whether

Salina court "would go on or not." Under the laws of the order there are two ways by which a subordinate court can be suspended and dissolved : First, by a vote of its members and a report of its action to the grand court; and, second, by action of the grand court, upon charges preferred for neglect to hold meetings, misconduct, or non-compliance with the rules of the order, but such action cannot be taken until the subordinate court has had notice of the charges and suitable opportunity has been given to answer them.

It is not contended that the members of the Salina court voted to dissolve the court, and there was no attempt to show that charges were preferred against the court, or that any notice was given of any contemplated action against the court by the grand court or the executive council. Until suspension and dissolution Swanson could, and should, have received the dues and assessments from members. He did receive the assessments for the endowment fund until July, 1901, and his remittances were received and acknowledged by the supreme secretary. Not only was he recognized as an officer of the association by the supreme officers, but he still retained the seal of the court, and, with the knowledge of the supreme secretary, was exercising some of the functions of his office. It is true that the general dues were not paid for the quarter preceding the death of Estes, but that was not because of the fault of either the insured or the beneficiary. Hollis offered to pay the dues to the financial secretary, and he refused to receive them. An offer made in good faith and so declined is equivalent to payment.

A forfeiture of the benefits cannot be justly based on any of the objections pleaded by the association. There can be no objection to the payment of assess-

ments for the endowment fund, as all were paid monthly in advance, and the last one which the association returned was kept until two months after the death of Estes, and after steps had been taken to collect the benefit.

The objection that the general dues were not paid monthly in advance, as the by-laws provided, is without force, since the association did not follow its own by-laws in respect to the payment of such dues. It was the undisputed testimony that a custom had been followed for a considerable time of paying the general dues quarterly and at any time during the quarter. It is well settled that an insurance association of this character will not be permitted to assert a forfeiture because assessments were not paid at specified times, where, by the adoption of a custom, or the course of its conduct, it has led the insured members honestly to believe that the assessments will be received after the appointed day. (*Insurance Co. v. Eggleston,* 96 U. S. 572, 24 L. Ed. 841 ; *Sweetser v. The Odd Fellows Mutual Aid Association of Indiana,* 117 Ind. 97, 19 N. E. 722 ; *Insurance Co. v. French,* 30 Ohio St. 240, 27 Am. Rep. 443 ; *Stylow v. The Wisconsin Odd Fellows Mut. Life Ins. Co.,* 69 Wis. 224, 34 N. W. 151, 2 Am. St. Rep. 738 ; *Mutual Life Ins. Co. v. Amerman,* 119 Ill. 329, 10 N. E. 225 ; *De Frece v. N. L. Ins. Co.,* 136 N. Y. 144, 32 N. E. 556 ; *McCorkle v. Ins. Association,* 71 Tex. 149, 8 S. W. 516 ; *Home Protection of North Alabama v. Avery,* 85 Ala. 348, 5 South. 143, 7 Am. St. Rep. 54 ; *Woodmen Circle v. Stretton,* 68 Kan. 403, 75 Pac. 472 ; Nibl. Mut. Ben. Soc. § 332 ; 2 Bacon, Ben. Soc. Life Ins. §§ 361, 431.)

No error was committed in the rulings on the testimony, nor in charging the jury.

At the close of the trial the association undertook to inject into the case the issue that Hollis had no in-

surable interest in the life of Estes. The matter was raised by request for an instruction, and had not been made an issue by the pleadings. The contract which was pleaded was valid upon its face. The insurance had been procured by Estes on his own life for the benefit of his stepson, Hollis. Apart from the relation of affinity, however, there may have been dependence, or other condition, to warrant the insurance. The insurance not having been procured by Hollis, it was not necessary for him to aver that he had any interest in the life of the insured. If the insurer relied on such defense it devolved upon it to plead and prove it. ( *Mass. Mut. Life Ins. Co. v. Kellog*, 82 Ill. 614 ; *Brennan v. Prudential Ins. Co.*, 148 Pa. St. 199, 23 Atl. 901 ; *Kennedy v. N. Y. Life Ins. Co.*, 10 La. Ann. 809 ; Nibl. Mut. Ben. Soc., 2d ed., § 322 ; 4 Joyce, Ins. § 3673.) The question not having been put in issue by the pleadings, the court rightly refused to submit it to the jury.

The judgment of the district court will be affirmed.

SMITH, CUNNINGHAM, MASON, ATKINSON, JJ., concurring.

GREENE, J. (dissenting) : The principle of law announced in subdivision 3 of the syllabus, and the corresponding portions of the opinion, is not in my judgment involved in the determination of the questions presented by the refusal of the court to give the instructions requested. I, therefore, do not concur therein. The plaintiff in this action sought to recover on a mutual-benefit certificate issued by the defendant to one John C. Estes, on his own life, for the benefit of the plaintiff. The petition, omitting the formal portions, reads :

"That on or about March 17, 1880, at its request, one John C. Estes, stepfather of this plaintiff, became

a member of court Kansas City No. 6351, of Kansas City, Mo., of said defendant association, and became a member of said endowment fund, and for a valuable consideration paid by him to said association, and in consideration of his further promise to pay to said association such amounts as might thereafter be required of and assessed against him in pursuance of the by-laws of said association, defendant duly executed and delivered to him its certain written contract, called an endowment certificate, No. 3795, whereby the defendant promised and agreed to pay to the beneficiaries designated in said endowment certificate, viz., the wife and heirs of said John C. Estes, upon the death of the said John C. Estes, the sum of one thousand dollars.

"That on or about the 9th day of May, 1895, upon the application of the said John C. Estes, and upon the payment by him to said association of all fees required and the surrender by him of said endowment certificate to it, and a full compliance upon his part with the by-laws of said association, defendant duly executed and delivered to him its certain contract in writing, whereby defendant promised and agreed to pay to this plaintiff, upon the death of said John C. Estes, the sum of one thousand dollars.

"A full, true and correct copy of said contract in writing, and of all its terms and conditions, and of all indorsements thereon, is hereto attached, marked 'Exhibit A,' and made a part thereof."

The certificate, which by specific allegations is made a part of the petition, contains the following recital:

"Beneficiary: W. H. Hollis, stepson. Duplicate of original. Issued May 9, 1895. Accepted as per laws of endowment fund."

The defendant denied generally, and also pleaded some special defenses, but the latter are not material to the determination of the question under discussion. At the proper time the defendant objected to the introduction of any evidence under the petition, because

of an insufficient statement of facts. This was over-ruled. On the trial the plaintiff introduced no testi-mony tending to show any relation existing at any time between himself and Estes, except that of step-son and stepfather. When the plaintiff had concluded his evidence the defendant demurred, and the demur-rer was overruled.

After the evidence was concluded, no effort having been made to show the existence of any relation be-tween Estes and Hollis except that stated in the peti-tion, the defendant requested the court to instruct the jury that the plaintiff was not entitled to recover be-cause he had not shown an insurable interest in the life of Estes. It is held in the opinion that this ques-tion was not involved in the case, and, therefore, the court did not err in refusing the instruction ; and it is also held that, if defendant wished to rely on such a defense, it should have pleaded the facts. With the general rule of pleading in such cases we are not con-cerned. In the present case the plaintiff pleaded the fact that when the certificate was issued the plaintiff was the stepson of Estes, and the certificate on which he relied as the foundation of his action also stated that the beneficiary was the stepson of the insured. It was on the relation of stepson of the insured that plaintiff based his right to recover, and it was upon this statement of fact by the plaintiff that the question of law arose. It was, therefore, wholly unnecessary for the defendant to plead the same facts in order to raise the question. It is stated in the opinion that "apart from the relation of affinity, however, there may have been dependence, or other condition, to war-rant the insurance." Such condition may have ex-isted, but the fact was not made to appear, and the plaintiff relied wholly upon the relation of stepson

and stepfather, which precludes the presumption of the existence of any other relation.

But why presume the existence of facts in favor of the pleader that are not claimed by him and which are not necessarily a sequence of those pleaded? If a pleader may safely rely on the court to presume the existence of facts favorable to him which are not pleaded, the science of pleading, so far at least as a plaintiff is concerned, would be very much simplified. Whether one has an insurable interest in the life of his stepfather is a question of law, and in this case that question arose on the facts stated in the plaintiff's petition, and was presented to the court below properly and timely. It is preserved in the record in this court and should be decided.

BURCH, J., not sitting, having been of counsel in the case.