Foresters v. Cunningham.

INDEPENDENT ORDER OF FORESTERS *v.* MRS. ELLA C. CUNNINGHAM.*

[(*Nashville.* December Term, 1912.)

1. **LIFE INSURANCE. Forfeitures are not favored, and will not be enforced against equity and good conscience.**

It is a firmly imbedded doctrine in our jurisprudence that forfeitures of life insurance policies are not favored, and will not be enforced against equity and good conscience. (*Post, p. 529.*)

Case cited and approved: Insurance Co. v. Fallow, 110 Tenn., 720 (and the cases cited there).

2. **SAME. Agent acting within the general scope of his apparent authority, though exceeding his authority, binds his principal.**

An agent of an insurance company, having ostensible general authority to solicit applications, make contracts for insurance, and receive first premiums, binds his principal by any acts or contracts within the general scope of his apparent authority, notwithstanding the actual excess of authority. (*Post, p. 529.*)

Case cited and approved: Murphy v. Insurance Co., 3 Bax., 440; Insurance Co. v. Fallow, 110 Tenn., 720.

3. **SAME. Provision for forfeiture of policy for nonpayment of premiums will be enforced unless waived.**

It is well settled in this State that a provision in a policy of insurance for a forfeiture of the contract for nonpayment of prem-

---

*As to the waiver by subordinate lodge of right of benefit association to insist upon forfeiture of benefit because of violation of laws of association, see note in 10 L. R. A. (N. S.), 136. And for waiver by officers of subordinate lodge of forfeiture for nonpayment of assessments, see notes in 4 L. R. A. (N. S.), 421, and 38 L. R. A. (N. S.), 571.

The question whether a breach of an insurance policy which *ipso facto* terminates it may be waived is treated in a note in 25 L. R. A. (N. S.), 78.

Foresters v. Cunningham.

iums is a material element of the contract, **the violation of** which will forfeit the contract, unless the forfeiture has been waived. (*Post, p.* 529.)

Cases cited and approved: Dale v. Insurance Co., 95 Tenn., 38; Insurance Co. v. Fallow, 110 Tenn., 720; Insurance Co. v. Statham, 93 U. S., 24.

**4. SAME. Waiver of forfeiture grows out of new contract arising from conduct; and forfeiture will not be allowed as against good faith and conscience.**

The doctrine of waiver and estoppel, as applied to the forfeiture of insurance contracts, does not grow out of the original agreement of the parties, but out of a new contract, arising from the conduct of the parties, not to insist upon the forfeiture; and although there is no formal waiver, the courts will not allow a party to claim a forfeiture in violation of good faith and good conscience. (*Post, pp.* 529-531.)

**5. SAME. Forfeiture may be waived by officers or agents of mutual benefit insurance associations as well as by those of regular insurance companies.**

A forfeiture clause in a benefit insurance certificate, as well as that in a policy of a regular stock insurance company, may be waived by its officers or agents, within the real or apparent scope of their authoirty, although the quality of mutuality of the members is thereby impaired. (*Post, pp.* 531, 532.)

Cases cited and approved: McCarthy v. Catholic Knights, 102 Tenn., 345; Modern Woodmen v. Breckenridge, 75 Kan., 373; Whigham v. Independent Foresters, 44 Or., 543; Ball v. Association, 64 N. H., 291; Modern Woodmen v. Lane, 62 Neb., 89; Thornburg v. Association, 122 Iowa, 260; Modern Woodmen v. Colman, 68 Neb., 660; Pringle v. Modern Woodmen, 76 Neb., 384; Insurance Co. v. Logan (Ky), 149 S. W., 922; Association v. Robinson, 149 Ky., 80; Walker v. Independent Foresters, 162 Ill. App., 30: Foresters v. Hollis, 70 Kan., 71; Trotter v. Lodge, 132 Iowa, 513.

Foresters v. Cunningham.     .

6. **SAME.** Waiver of forfeiture by deputy executive officer of a fraternal benefit society, when.

A deputy executive officer of a fraternal benefit society, invested with all the authority and power pertaining to the chief executive office within the territory over which he has jurisdiction, and having authority to initiate members into the order and to accept them as proper risks, subject to the ratification of the home office, to collect and remit initial and subsequent premiums, and to deliver the policy or contract of insurance when received from the home office, has authority to waive a provision for forfeiture contained in the constitution and by-laws. (*Post, pp.* 524, 525, 532, 533.)

Case cited and approved: Trotter v. Lodge, 132 Iowa, 513 (citing cases).

7. **SAME.** Benefit society's waiver of forfeiture by its deputy executive officer's delivery of certificate, with knowledge of applicant's sickness.

Where the applicant for membership in a benefit society, after making the application, and after his physical examination by the society's examining physician, learned that he had acute nephritis; but a deputy executive officer, having, within his territory, all the authority and power pertaining to the chief executive office, with knowledge that the member was suffering from such disease, subsequently delivered the certificate to him, contrary to a provision of the constitution and by-laws of the society that an applicant who might be ill when he presented himself for initiation should not be initiated, even though he had been duly examined and recommended by the examining physician, and the society subsequently assessed and collected the assessments due under the certificate, the said provision of the constitution and by-laws was waived, and society was liable on the certificate, especially where there was no purpose on the part of the member to deceive or mislead the society by concealing such disease at the time of the application or initiation.

**FROM DAVIDSON.**

Appeal from the Second Circuit Court of Davidson
County to the Court of Civil Appeals, and by *certiorari*
from the Court of Civil Appeals to the Supreme Court.—
M. H. MEEKS, Circuit Judge.

F. M. BASS, for plaintiff.

PENDLETON & DEWITT, for defendant.

MR. JUSTICE LANSDEN delivered the opinion of the
Court.

Mrs. Cunningham brought this suit in the circuit
court of Davidson county to recover of the defendant
the face value of a benefit certificate issued by it to her
husband. There were a verdict and judgment for plain-
tiff in the court below, and upon appeal to the court of
civil appeals, the action of the circuit court was in all
things affirmed. A petition for writs of *certiorari* to the
judgment of the court of civil appeals was filed in this
court, which has been allowed, and the case has been
argued at the bar.

Plaintiff in error is a fraternal benefit society incor-
porated under the laws of the Dominion of Canada. Its
chief executive officer is known as the supreme chief

ranger, and one Boger was the deputy supreme chief ranger, with headquarters in Nashville, and he was invested with all the authority and power which pertain to the chief executive office of the order within the territory over which he had jurisdiction. He had authority to initiate members into the order and accept them as proper risks, subject to the ratification of the home office, and power to collect for and remit to the order initial and subsequent premiums due from the members to the order. He also had power to deliver to the member the policy or contract of insurance when received by him from the home office.

Cunningham made application for membership into the order at the repeated solicitation of Boger, on February 19, 1908. On that day he was physically examined by a physician selected by the order for that purpose in conformity with the requirements of the order, and was the next day accepted as a proper risk. On the night of the 19th, Cunningham discovered that his feet and legs were swollen, and consulted a physician, who informed him that he had acute nephritis, or Bright's disease, and advised him to take his bed; but the assured was not suffering, and did not regard his condition as serious, and on the next day returned to work as usual. On that day the physician who had examined Cunningham for the order gave to Boger a report of his examination which failed to show any evidence of the disease. Boger, having authority to do so, initiated Cunningham into the order and accepted him as a risk for insurance. Cunningham took his bed on the night of the 20th, and

was confined there until some time in November, when he died of nephritis.

The benefit certificate did not actually issue until March 6, 1908, and was not delivered to Cunningham until several days thereafter. Boger became aware and knew that he was suffering from Bright's disease before the benefit certificate was delivered. Other members of the subordinate lodge to which Cunningham belonged were also aware of his condition and visited him during his sickness. Boger visited him at least twice, and discussed with him the question as to whether he was entitled to sick benefits from the order. With full knowledge of the real facts, Boger delivered the benefit certificate and collected the dues or assessments under the rules and regulations of the order until Cunningham's death. One of the provisions of the constitution and by-laws of the plaintiff in error is as follows:

"An applicant for membership, who may be ill or suffering from an injury of any kind at the time he presents himself for initiation, shall not be initiated, even though he has been duly examined and recommended by the court physician, or other duly authorized examining physician, or his medical examination has been accepted by the medical board, until after he has fully recovered from such illness or injury, and until he has again been examined by the court physician, and such medical examination has been accepted by the medical board."

The plaintiff in error defended below upon the ground, among others, that the assured was initiated into the order in violation of the foregoing provision of the by-laws,

and claimed a forfeiture of the contract upon that ground. The reply to this defense made by the defendant in error is that the order is estopped to insist upon the forfeiture, and has waived the forfeiture provision by delivering the benefit certificate and accepting the dues and assessments after it had come into full knowledge of the assured's condition.

It is said for the plaintiff in error that, because it is a mutual benefit society, the rules of waiver and estoppel as applied to stock insurance companies do not apply to it, for the reason that its officers and agents cannot waive conditions which go to the  substance of the contract between the society and the members.  This distinction is sought to be supported upon the idea that each member of the organization must be conclusively presumed to have knowledge of the limits set upon the authority of the agents and officers of the society to which he belongs; and that, the burdens and benefits of such an organization being mutual as between the membership, it would be unjust and inequitable to permit an officer or agent of the order to waive a condition of forfeiture.  The contention of counsel upon this point is best stated in the language of Mr. Niblack in his work on Benefit Societies, from which the following is taken:

"Mutual benefit societies and stock companies are essentially different in their plans of carrying on the business of life insurance. Societies have many by-laws, which are a part of the contract of insurance, and which are binding on all the members, whether officers or not. They are conducted on the principle of mutuality, and

Foresters v. Cunningham.

should give insurance to each member on the same terms, conditions, and restrictions. It would be destructive of this equality in the contract of insurance to give to an officer the power to waive the provisions of a by-law which relates to the substance of the contract. As a general rule, an officer of a mutual benefit society has no authority to waive a strict compliance with the by-laws on the part of a member. The society has power to establish by-laws, and it is the imperative duty of the members to comply with them. . . This rule, however, does not extend to those by-laws which relate to the clerical transactions of its business, or to the mode of establishing its liability. By-laws in regard to proof of death of a member, for instance, may be waived. But it is well settled that the officers of such a society have no authority to waive those of its by-laws which relate to the substance of the contract between it and a member, determine the relations of members to each other, or in any manner fix the rights and liabilities of the parties."

The authorities cited in support of the text are *Burbank* v. *Association*, 144 Mass., 434, 11 N. E., 691; *Swett* v. *Society*, 78 Me., 541, 7 Atl., 394 *Mulrey* v. *Insurance Company*, 4 Allen (Mass.), 116, 81 Am. Dec., 689; *Lyon* v. *Society*, 153 Mass., 83, 26 N. E., 236, and two cases from the intermediate courts of Illinois and Missouri. Mr. Bacon takes the same distinction. In his work on Benefit Societies of Life Insurance, at section 434, he cites in support of the text the case from Maine, supra, one of the cases from Massachusetts, supra, and an additional case from that State, together with a case

Company's plant, now located on the waters of Brush creek in Johnson City, Washington county, Tennessee." This deed was in fee simple, and contained covenants seizin and against incumbrances and a covenant of general warranty of title. It was duly acknowledged on the 17th of March, 1909, and duly recorded on the 18th of March, 1909.

It appears from the evidence that this deed covers the southwestern thirty-foot front of the land described in the second deed, the unrecorded deed which was made by Brown to the defendant Home Ice & Coal Company.

Shortly before the present suit was brought the defendant erected a barn upon a portion of this thirty feet, and thereupon the present action was brought by Campbell, claiming title under his deed from Crumley, and alleging that he had no knowledge of the prior unrecorded deed to the defendant, and that he was a *bona fide* purchaser. The defendant answered, admitting that its deed of May 21 had never been recorded, but averring that the complainant's deed was champertous, because at the time of its execution the defendant was in open and adverse possession of the lot in controversy. The other defense was that the complainant was claiming through a quitclaim deed from Brown to Crumley, and inasmuch as Brown had conveyed the lot in controversy to the defendant, by the unrecorded deed referred to, there was nothing left in him which the quitclaim deed could convey.

The case was heard before Hon. S. C. Williams, special chancellor, who decreed in favor of complainant,

126 Tenn. 34    ,

tracts of regular insurance companies with the assured are supported by abundant authority, and are not questioned in this case. But it is said that these principles do not apply to a benefit society, in so far as they justify the waiver of the substance of the contract between it and a member, or determine the relation of members to each other, or in any manner fix the rights and liabilities of the parties. In our opinion, this contention overlooks the fundamental basis of the doctrine of waiver and estoppel as applied to contracts. This doctrine does not grow out of the original agreement of the parties, but is based upon the conduct and dealings of the parties with each other in respect of the particular matter in controversy. It affects the conscience of the party whose conduct has led the other to a course of dealing to his injury, so that he is not allowed to predicate a right upon a former agreement inconsistent with his course of conduct. In practical effect, the conduct of the parties makes a new contract, the substance of which is that the society agrees not to insist upon the forfeiture clause. It is not meant that the parties formally agree to a waiver of the forfeiture clause, but that the courts will not allow the party claiming the forfeiture in violation of good faith and good conscience to set it up. This is the rationale of those cases announcing the doctrine of waiver and estoppel as applied to regular insurance companies, and we can see no magic in the name of a benefit society which will allow it to avail itself of an advantage against equity and good conscience. The fact that a waiver of the forfeiture clause of the policy may

impair the principle of mutuality between the members of the society is no reason why the law should permit the society itself to act unjustly.   It is the nature of such organizations, like regular insurance companies, that they can only act through their agents and officers. If it were possible that the membership could act *en masse,* and thus be guilty of a course of conduct which would waive a forfeiture clause in one of its policies, it could not be truly said that the waiver should not be enforced because it would impair the quality of mutuality.   In such a case, the individual conscience of each member would be directly affected, so that no one could claim advantage which had been obtained by representations made by them and relied upon by the assured. What different attitude can the membership assume, when, instead of acting *en masse,* they act through their agents and officers selected for the purpose?

It may be conceded that the contract of insurance between the society and its members is laid out upon such lines as to preserve the quality of mutuality underlying the scheme of organization and operation.   If the rules and regulations of the society should be strictly observed, the principle of mutuality would be preserved. But if the officers and agents, acting within the real or apparent scope of their authority, pass by a rule or regulation intended to preserve mutuality, and induce a member to act upon the assumption that the regulation is waived, and, so acting, change his condition for the worse, the principle of mutuality is waived, together with the regulation itself.   This is obviously so, because

mutuality is preserved alone by the rules and regulations of the company.

What appears to be a great weight of modern authority is in accord with this holding. *Modern Woodmen v. Breckenridge,* 75 Kan., 373, 89 Pac., 661, 10 L. R. A. (N. S.), 136, 12 Ann. Cas., 636; *Whigham* v. *Independent Foresters,* 44 Or., 543, 75 Pac., 1069; *Ball* v. *Granite State Mutual Aid Ass'n,* 64 N. H., 291, 9 Atl., 103; *Modern Woodmen of America* v. *Lane,* 62 Neb., 89, 86 N. W., 945; *Thornburg* v. *Farmers' Life Ass'n,* 122 Iowa, 260, 98 N. W., 105; *Modern Woodmen* v. *Colman,* 68 Neb., 660, 94 N. W., 814, 96 N. W., 154; *Pringle* v. *Modern Woodmen,* 76 Neb., 384, 107 N. W., 756, 113 N. W., 231; *Kentucky Growers' Insurance Co.* v. *Logan et al.* (Ky.), 149 S. W., 922.

The principle was stated in *McCarthy* v. *Catholic Knights,* 102 Tenn., 345, 52 S. W., 142; *Masonic Life Ass'n* v. *Robinson,* 149 Ky., 80, 142 S. W., 882, 41 L. R. A. (N. S.), 505; *Walker* v. *Independent Order of Foresters,* 162 Ill. App., 30; *Foresters of America* v. *Hollis,* 70 Kan., 71, 78 Pac., 160, Ann. Cas., 535; *Trotter* v. *Grand Lodge,* 132 Iowa, 513, 109 N. W., 1099, 7 L. R. A. (N. S.), 569, 11 Ann. Cas., 533.

Having determined that the officers and agents of the association may waive the provision for forfeiture, it is perfectly clear upon our authorities that Boger was such an agent of the society and that he acted for it. *Murphy v. Southern Life Insurance Co.,* supra. In the case of *Trotter* v. *Grand Lodge,* supra, the supreme court of Iowa said:

"The authorities are substantially unanimous that in schemes of co-operative life insurance, in which the authority to issue benefit certificates, prescribe terms of membership, and levy assessments is vested in a grand or supreme lodge, or council, or other central governing body, which central body exercises jurisdiction over local lodges or societies, through which the membership is recruited, and by the officers of which assessments are collected and remitted, the local organization and its officers, to whom the duty of making such collections is committed, are to be considered the agents of the governing body. *Bragaw* v. *Supreme Lodge, etc.*, 128 N. C., 354, 38 S. E., 905, 54 L. R. A., 602; *Fraternal Aid Ass'n* v. *Powers*, 67 Kan., 420, 73 Pac., 65; *Whiteside* v. *Supreme Conclave, etc.* (C. C.), 82 Fed., 275; *Schunck* v. *Gegenseitiger Wittwen, etc., Fond*, 44 Wis., 369; Bacon's Ben. Soc. (3d Ed.), 148; *Brown* v. *Supreme Ct., etc.*, 176 N. Y., 132, 68 N. E., 145."

The remaining question is whether the conduct of Boger as disclosed by the record amounts to a waiver of the forfeiture or an estoppel of the society to set it up. We think clearly that it does. It is beyond doubt that he knew the condition of Cunningham before the policy was delivered. This being true, it is immaterial whether he knew of his condition at the time of the application or not. The evidence indicates that Cunningham himself did not realize his condition at the time of the application, and it is certain that the examination made by the society's physician did not disclose any evidence of nephritis. There is no criticism upon the ability of this

physician, or of the kind of examination that he made. It is established by the verdict of the jury, and there is evidence to the effect, that Cunningham had no purpose to deceive or mislead the society. It was plainly the duty of Boger, acting for the society, to refuse to deliver the benefit certificate, if it was intended at any time to insist upon a forfeiture. Instead, however, he delivered it to Cunningham while he was in bed, and the society regularly assessed and collected the assessments due under the policy. The society cannot be permitted to hold fast and loose with the contract. It cannot insist upon the contract for the purpose of collecting dues and appropriating them to its benefit, and then deny it for the purpose of avoiding payment of the benefit certificate, or to lead the assured to believe that his contract with it was valid, and that his certificate would be paid if he should die. It cannot now repudiate its conduct by which the assured was led into a line of action which materially changed his situation.

The judgment of the court of civil appeals is affirmed, with costs.