NETTIE P. FENN, *Appellee*, V. THE NORTHWESTERN
NATIONAL LIFE INSURANCE COMPANY, *Appellant*.

No. 18,273.

SYLLABUS BY THE COURT.

LIFE INSURANCE—*Premiums Not Paid on Specified Date—Acceptance for Years—Waiver of Forfeiture of Policy.* A life insurance policy provided for the payment of premiums on the first day of each month, and forfeiture for nonpayment. It also provided for reinstatement during the life of the insured at any time within twelve months of the date of lapse by the payment of past due premiums and a fine of ten per cent per annum on such overdue premiums. Premiums were paid on the policy for over six years on or about the 20th day of each month. The premiums so paid were accepted without objection or comment by the company, and its receipts were given therefor. The last payment was in November, 1909, and the insured died on the 6th day of December following. The receipts contained no allusion to reinstatement and were in ordinary form. No fines were requested or paid, and no notice or intimation was given that the payments were not accepted as payments of monthly premiums as they purported to be. It is held that the facts were sufficient to support a finding that the company had waived payment of premiums on the appointed day.

Appeal from Sedgwick district court, division No. 1. Opinion filed June 7, 1913. Affirmed.

*R. R. Vermilion, Earle W. Evans,* and *Joseph G. Carey,* all of Wichita, for the appellant.

*Earl Blake, W. A. Ayres,* and *C. A. McCorkle,* all of Wichita, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is an appeal from a judgment upon a life insurance policy. The defense was based upon an alleged lapse of the policy for failure to pay a premium at the time stipulated.

The policy was issued March 17, 1902, on the life of Edwin H. Fenn, for $600, payable at his death to Nettie

P. Fenn, his wife, in consideration of the payment of premiums as follows: $60 for the first year, and a like amount in each year thereafter in twelve installments on or before the first day of each month until ten premiums have been paid, or until the prior death of the insured. The policy contained the following clauses:

"All premiums are due and payable at the Home Office of the Company, but may be paid to agents producing receipts signed by the President or Secretary, and countersigned by such agents; and the nonpayment of any premium when due, shall forfeit all premiums paid on this policy and terminate the liability of the Company thereunder, except as hereinafter provided. . . .

"This policy may be reinstated during the life of the insured at any time within twelve months of date of lapse, by the payment of all past due premiums, and a fine of ten per cent per annum on such overdue premiums."

The premiums were paid each month down to and including November, 1909. Fenn died December 6, 1909, and the company was duly notified of that fact by letter. The company answered on December 13, stating "that said policy lapsed for nonpayment of the premium which became due on December 1st, 1909, and has not been in force since that date. No claim, therefore, can be asserted under said policy." The plaintiff on December 17 sent a postal money order for $5 in a letter to the company for the December premium, which was returned with the statement that the policy had lapsed on December 1, 1909.

From the date of the policy all the monthly premiums were paid on or about the twentieth day of each month and were accepted without objection or com-

ment.    The following receipt was mailed by the company to Mrs. Fenn for the premium for March, 1904:

"NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY.
                MINNEAPOLIS, MINN.

Received      The holder of this Company's policy, numbered as
  from      indicated in the address hereon, the sum of $5.00,
N29395..    being the monthly premium thereon, due March 1,
            1904.
EDWIN H. FENN,
Ft. Scott, Kansas.
                                FRED J. SACKET, Secretary.
    JOHN MACVICAR, Manager,
        Topeka, Kansas.
            Local Collector.
Paid 3-19-1904."

Receipts in the same form were given for all the other payments.

The plaintiff alleged in her petition that at the time the policy was issued the insuring company by its agent and authorized officers, agreed to receive the monthly payments on the policy after the payment of her husband's salary on the 20th day of each month, and that the monthly premiums were paid and received about that date in accordance with that understanding. It was also alleged in the petition:

"That defendant held out and gave said Edwin H. Fenn to understand and to believe that if he continued to make payment of said premium as provided for in said agreement on or about the 20th to 24th day of the month in which the same became due such payments would be as effectual as though said premium was paid promptly on the first day of each month, and waived the time of said payments as provided in said policy, and gave time for the payment thereof until the 24th day of each month or thereafter; that said payments were made as aforesaid with the knowledge and consent of the president and secretary of said defendant and the payments made as aforesaid were received by said Company and receipted for from the home office of said Company, . . . that no fines of any kind or character were ever requested or required to be paid by said insured by reason of the payment of said premium as aforesaid, but it was the practice and custom of said defendant to so accept and receive such payments."

The custom of the company in receiving the payments after the first day of the month, and its reason for doing so are stated in a letter relating to the plaintiff's claim under the policy, written by its vice president and attorney in charge of the settlement of claims to the commissioner of insurance of the state of Minnesota. We quote from the letter:

"Premiums on this policy were due and payable on the first day of each month. It is true as reported to you, that the insured usually paid his premiums on or about the 20th of each month, and that those premiums were also accepted by our Company; but it is also true that we had no alternative, and were compelled under the terms of the contract, to accept those premiums *provided* that the insured was alive at the date of the payment. The clause of the policy governing the matter of reinstatement reads as follows: 'This policy may be reinstated *during the life of the insured* at any time within twelve months of the date of lapse by the payment of all past due premiums, and a fine of 10% per annum on such over-due premiums.' Reinstatement was, therefore, not optional with the Company. The insured had the absolute right of reinstatement at any time within twelve months *provided he was alive.* We would have been compelled to accept payment of the December, 1909, premium if the insured had been alive at the date when it was received at this office, which was December 22d, 1909; but we had already received notice that the insured had died on December 6th, 1909."

This letter is referred to in the brief of the attorneys for the defendant as an exposition of their contention, and the defense in this action is based upon the theory outlined in the letter. The fact that the premiums were all accepted and receipted for without objection or condition, about the 20th of each month, appears to afford evidence from which a waiver of the exact terms of the contract may reasonably be inferred; but it is contended that the clause giving a right to reinstatement by the payment of past-due premiums and a fine. if paid in twelve months after

default made the payment a matter of right and acceptance compulsory. If this construction of the contract is correct, the date for payment of premiums is extended twelve months, provided death does not occur sooner. If that were the meaning intended, it is reasonable to suppose that other terms would have been used in framing the policy.

The premiums were apparently received and receipted for, not as conditions of reinstatement, but as ordinary payments. No allusion was made at any time to any reinstatement, nor was any suggestion offered that the payments were so received. Neither was the payment of a fine, which was made a condition of reinstatement, required in any instance. As a reason for not exacting the fines it is said that the amounts were trivial, only three cents for twenty-five days. But as a fine was due upon each reinstatement the amount, although still small, was of some moment. If a like practice has prevailed in respect to other policies and the interpretation contended for is correct, a considerable loss of revenue has resulted. If the defendant's contention is well founded, this policy lapsed every month and was in force less than half the time. Such a situation could not have been in the mind of the insured, and it is difficult to suppose that the company so understood it. An occasional lapse might not challenge attention, but lapses every month for six years should, in view of the consequences claimed, have elicited some word of disapproval. While it is true that by the terms of the policy a notice of default was not required, the silence of the officers of this company through the long period covering more than seventy-five alleged lapses, inducing reliance upon the acceptance of payments made after the appointed day, is a course of conduct calling for some note of warning before it is summarily abandoned and a forfeiture claimed. A forfeiture will not be permitted where by the adoption of a custom or the course of its conduct

the insurer has led the insured member honestly to believe that the assessments may be paid and will be received at times other than those specified in the contract. (*Foresters v. Hollis*, 70 Kan. 71, 78 Pac. 160; *Benefit Association v. Wood*, 78 Kan. 812, 98 Pac. 219; *Hartford Life Ins. Co. v. Unsell*, 144 U. S. 439; *Home Protection of North Alabama v. Avery*, 85 Ala. 348, 5 South. 143, 7 Am. St. Rep. 54; *Insurance Co. v. French*, 30 Ohio St. 240.)

It is concluded that the evidence was sufficient to warrant a finding that the company had waived the strict time of payment. The demurrer to the plaintiff's evidence fairly presented the question of waiver, conceded by both parties to be the only question in the case. No other was argued. The defendant offered no evidence, and there was no dispute concerning essential facts.

The judgment is affirmed.