Edmiston v. The Homesteaders.

No. 19,059.

THOMAS EDMISTON, *Appellee,* v. THE HOMESTEADERS, *Appellant.*

SYLLABUS BY THE COURT.

FRATERNAL INSURANCE — *Nonpayment of Dues — Custom of Association—Waiver of Payment on Specified Date—No Suspension.* In an action upon a certificate of insurance issued by a fraternal benefit association, the by-laws of which provide that a member who has failed to pay an assessment on or before the last day in the month for which assessments are due, shall be suspended without notice and remain suspended until reinstated by filing a health certificate and the payment of delinquent dues and assessments, it is held, (following *Foresters v. Hollis,* 70 Kan. 71, 78 Pac. 160, and *Fenn v. Life Insurance Co.,* 90 Kan. 34, 133 Pac. 159) that the facts stated in the opinion show the adoption by the association of a custom and course of conduct at variance with the by-laws, which estop the association from claiming a forfeiture, and that, the death of the assured occurring prior to the time at which the custom permitted her to pay the assessment, she was at the time of her death a member in good standing.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed December 12, 1914. Affirmed.

*Gilbert M. Gander,* of Coffeyville, and *Frank H. Dewey,* of Des Moines, Iowa, for the appellant.

*A. R. Lamb,* of Coffeyville, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In the district court the plaintiff recovered judgment in an action upon a certificate of insurance. The defendant appeals.

The defendant is a fraternal insurance association with its supreme office at Des Moines, Iowa. Its local lodges are called "homesteads." Jennie Edmiston became a member of the Coffeyville homestead in June, 1907, and the defendant issued to her at that time a certificate of insurance for $1000, payable at her death to her brother, Thomas Edmiston, who was named as beneficiary. Jennie Edmiston died on November 5, 1912, and the plaintiff's right to recover upon the certificate of insurance depends upon whether she was a member of the order in good standing at the time of her death. The defendant claims that she was suspended on November 1, 1912, for nonpayment of the assessment for the previous month of October.

The plaintiff's contention is that the defendant is estopped from claiming a forfeiture of the certificate in controversy.

The by-laws provide that a member who has failed to pay his assessment on or before the last day in the month in which assessments are due shall be suspended without notice and so remain suspended until reinstated as provided. Another by-law provides that a member who has been in suspension for three months shall be reinstated if in good health by filing a health certificate and the payment of delinquent dues and assessments. According to the by-laws, Jennie Edmiston should have

paid the October assessment on or before October 31
1912.   At the time of her death, November 5, this as-
sessment had not been paid.   On November 6, the day
following her death, the plaintiff offered to pay the as-
sessment, but the local secretary of the defendant re-
fused to accept payment.

The plaintiff's evidence shows that for a long time
prior to the month of November, 1912, it had been the
custom of the secretary of the Coffeyville homestead
to leave the receipts for its members at a certain bank,
and it was customary for some of the members to call
at the bank and pay their dues and assessments there
and receive their receipts signed by the secretary.
Jennie Edmiston for several years had paid her dues
and assessments at this bank and had received her
receipt there, and it had been the custom of the officers
of the bank, with the knowledge and consent of the
local secretary, to receive dues and assessments from
members at any time while the receipts remained at
the bank, which, in some instances, was as late as the
7th of the following month, and this without exacting
a health certificate, as the by-laws of the defendant re-
quired.   It was also shown that members making pay-
ments in this manner after the last day of the month
for which assessments were due were not suspended,
but were carried upon the book  ' the local homestead
the same as members who had made their payments as
provided for in the by-laws.

It appears from the evidence that in 1912 there were
about 412 members of the Coffeyville homestead.
About one-fourth of them paid their assessments at the
bank during that year.   There were always a few strag-
glers who paid at the bank between the 1st and the 5th
and in some instances as late as the 6th of the follow-
ing month.   The defendant's by-laws contained a pro-
vision that the failure of the local secretary to mail the
monthly payments to the supreme secretary before the
5th day of the month following the collection of the

same should suspend the homestead, and that notice of such suspension should be mailed by the supreme secretary to the president, secretary and treasurer of the delinquent homestead. This provision was not en- the evidence shows, the charter of the Coffeyville home- stead did not usually mail her report to the supreme secretary until about the 9th of each month. So far as the evidence shows, the charter of the Coffeyville home- stead was never suspended and no notice of suspension was ever given by the officers of the supreme lodge, but they continued to receive the remittances and the re- port from the secretary of the Coffeyville homestead after the 5th of the month without objection.

The plaintiff's evidence showed that Jennie Edmiston had paid two of her last ten assessments after the first day of the following month; one having been paid on January 5, 1912, for December, 1911, and another pay- ment having been made on May 4, 1912, for the April assessment. It was further shown that forty-one mem- bers of the local homestead failed to pay their October, 1912, assessment until after the time provided for in the by-laws, and that nine of the members, including the president of the Coffeyville homestead, paid their October assessments on the 6th day of November, 1912, the day after the death of Jennie Edmiston. This was the day on which the plaintiff offered to pay the assess- ment for Jennie ·Edmiston. It further appears that in cases where a member was permitted to pay an assess- ment after the first day of the following month no health certificate was required.

The contentions of the defendant are: First, that the by-laws are self-operating, and the failure to comply therewith of itself operates to suspend the member and render the certificate void. Second, that reinstatement is a personal privilege and can not exist after the death of the insured. Third, that before plaintiff can recover on the theory of a waiver the burden rests upon him to show not only a custom, but knowledge on the part of

Jennie Edmiston of the existence of such a custom, and also knowledge on the part of the supreme officers of the defendant. Fourth, that the by-laws of the defendant expressly provide that there shall be no waiver of the kind relied upon by the plaintiff. The particular by-law referred to reads as follows:

"No officer of the society is authorized or permitted to waive any of the provisions of the laws of the society relating to the substance of insurance, or the payments therefor between the members and the society, and it is expressly understood and agreed, that any failure of any officer of this society to fully observe the rules and regulations of this society, or its by-laws respecting the payments due the Homestead or Supreme Office shall not be considered a waiver of any such rules or requirements."

In this connection it is contended that the local secretary was the agent of the defendant to collect and remit the benefit assessments at the time and in the manner prescribed in the by-laws, and at no other times and upon no other conditions, and that no act or omission of the secretary of the local homestead could create any liability of the defendant, nor could it amount to a waiver of any right or defense belonging to the defendant under the certificate of insurance and the by-laws of the order which became a part of the certificate.

The sole question in this case is whether the defendant by its course of dealing with the local lodge and with Jennie Edmiston waived the provision of its by-laws. It can not be doubted that there are many authorities which hold that where a member of an association of this character dies before having been reinstated, and without having paid the assessment, it is then too late for such member to be reinstated by any act of the beneficiary. See the case of *Modern Woodmen of America v. Tevis,* 117 Fed. 369, and cases cited in the opinion. But in our view of the case plaintiff's evidence established a custom which existed so long that it must be held to have been within the knowledge of the supreme officers of the defendant. It is true that the

evidence shows that only on two occasions had Jennie Edmiston availed herself of the custom, both in the year in which she died; once in January, and once in April. This was surely sufficient proof to show that she had knowledge of the custom and that she relied upon the same. The testimony showed that the local secretary habitually violated the provisions of. the by-laws to forward her·report to the supreme secretary on or before the fifth day of each month, and that in no instance was the local homestead suspended, nor any notice sent to the local secretary of such suspension. This was certainly sufficient to bring the attention of the officers of the supreme lodge to the existence of the custom. (*Fenn v. Life Insurance Co.,* 90 Kan. 34, 133 Pac. 159.)

It appears that there is a provision of the by-laws that the secretaries of the local homesteads are under the immediate supervision and control of the executive committee of the defendant and this committee may at any time discharge them for cause. Another provision of the by-laws is that the local secretary acts for the supreme officers and represents them in the local homestead. There appears a further provision that the local secretary shall collect the money from the members and forward it to the supreme secretary. The local secretary countersigns all beneficiary certificates issued by the defendant and attaches the homestead seal thereto; and no beneficiary certificate is valid until signed and sealed by the local secretary. In the case of *Foresters v. Hollis,* 70 Kan. 71, 78 Pac. 160, it was said in the opinion:

"The financial secretary of the local court is not only an officer of that court but he acts for the association as well. He collects and forwards the assessments from the endowment fund to the supreme secretary, and he is the officer to whom all other dues and assessments are to be paid." (p. 73.)

In that case it was held that payment according to a custom at variance with the by-laws of the order will prevent a forfeiture:

"Nor will such association be permitted to assert a forfeiture because assessments were not paid at the times stated in the printed by-laws, where, by the adoption of a custom, or the course of its conduct, it has led the insured members honestly to believe that the assessments may be paid, and will be received, at times other than those specified in the printed rules." (Syl. ¶ 2.)

To the same effect is *Modern Woodmen v. Jameson,* 48 Kan. 718, 30 Pac. 460. These cases, and the case of *Fenn v. Life Insurance Co.,* 90 Kan. 34, 133 Pac. 159, are decisive of the case at bar. In the Fenn case it was held that the evidence was sufficient to warrant a finding that the company had waived the strict time of payment. It was said in the opinion:

"A forfeiture will not be permitted where by the adoption of a custom or the course of its conduct the insurer has led the insured member honestly to believe that the assessments may be paid and will be received at times other than those specified in the contract. (*Foresters v. Hollis,* 70 Kan. 71, 78 Pac. 160; *Benefit Association v. Wood,* 78 Kan. 812, 98 Pac. 219; *Hartford Life Ins. Co. v. Unsell,* 144 U. S. 439; *Home Protection of North Alabama v. Avery,* 85 Ala. 348, 5 South. 143, 7 Am. St. Rep. 54; *Insurance Co. v. French,* 30 Ohio St. 240.)" (p. 38.)

See, also, Note to the case of *Morgan v. Northwestern Nat. Life Ins. Co.,* 42 Wash. 10, 84 Pac. 412, in 7 Ann. Cas. 382; *Grand Lodge A. O. U. W. v. Lachmann,* 199 Ill. 140, 64 N. E. 1022; *Beil v. Supreme Lodge,* 80 App. Div. 609, 80 N. Y. Supp. 751; *Seehorn v. Catholic Knights of America,* 95 Mo. App. 233, 68 S. W. 949.

The authority of an officer of a subordinate lodge to waive forfeiture for nonpayment of assessments is discussed in a note to *Royal Highlanders v. Scovill,* 66 Neb. 213, 92 N. W. 206, in 4 L. R. A., n. s., 421.

It is urged, however, that no reinstatement could be made of Jennie Edmiston after her death, but as we view the question, her death occurring prior to the time at which the custom permitted payment of the assessment would make no difference. If she had died on the 29th day of October, with the right to make a payment at any time before the 31st, she would have been a member in good standing, and so if an established custom of the defendant permitted her to pay her assessment as late as the 7th day of the following month, and she had the right to rely on that custom, and to pay at any time before the 7th without a certificate of health, then her death before that day would leave the situation precisely the same as though she had died on the 29th of the month. In *Trotter v. Grand Lodge,* 132 Iowa, 513, 109 N. W. 1099, 7 L. R. A., n. s., 569, the beneficiary relied upon a similar custom and the insured died before any payment was made. The secretary of the local lodge was frequently away from home on the last day prescribed by the by-laws for payment of assessments, and it had long been his custom to accept payments at any time prior to the day when he transmitted the collections to the supreme body. The Iowa court applied the principle of waiver and estoppel, and held that the by-law providing that a failure to pay on or before the specified day would *ipso facto* cause a suspension of the member was waived by the custom of the local officer in accepting payments after that date; that he was the agent of the supreme lodge with respect to the business of making such collections, and although the insured, without having paid the assessment, died after the first of the month, and before the time fixed by the custom for receiving the payments, the beneficiary could recover. In the opinion the court comments upon the fact that although payments were frequently made after the date specified by the by-laws, in no instance was a delinquent member treated as suspended provided the local secre-

Armstrong v. Street Railway Co.

tary accepted the payment prior to the date when he transmitted the collections to the supreme body.

We think the weight of authority and reason supports the rule that the defendant is bound by the custom which it permitted the secretary of the local lodge to establish, and that this custom, long acquiesced in by the defendant, by which payment of assessments was accepted at any- time while the receipts remained with the bank, constituted a waiver, and estops defendant from now claiming that the deceased was suspended by the failure to pay the October assessment.

It follows that the judgment will be affirmed.