Marjorie **ROBERTS**, the Mission State Bank and Trust Company (now Federal Deposit Insurance Corporation); and the Overland Park State Bank and Trust Company, Plaintiffs-Appellees,

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant-Appellant.**

No. 84–1404.

United States Court of Appeals, Tenth Circuit.

Jan. 7, 1987.

As Amended Jan. 30, 1987.

William J. Toppeta (Rena Friedlander, of counsel, with him on the briefs), New York City, for defendant-appellant.

Richard T. Merker (Leonard J. Schapker also of Wallace, Saunders, Austin, Brown and Enochs, with him on the briefs), Overland Park, Kan., for plaintiffs-appellees.

Before LOGAN and MOORE, Circuit Judges, and WEST, District Judge.*

LOGAN, Circuit Judge.

In this diversity case, defendant, Metropolitan Life Insurance Company, appeals from the judgment of a federal district court in Kansas holding Metropolitan liable to pay the full amount of a $250,000 insurance policy on the life of Sherman H. Roberts. The district court found that Metropolitan's conduct had led Roberts to justifiably believe that his late premium payments would be accepted without fulfillment of the policy's reinstatement requirement. Accordingly, the court concluded, Metropolitan was estopped to rely on the policy's forfeiture and reinstatement provisions to deny payment after Roberts' death to an assignee of the policy (the FDIC as successor to the Mission State Bank and Trust Company (Mission)) and policy beneficiaries.

In this appeal, Metropolitan contends that the district court's application of Kansas law is clearly erroneous and, in the alternative, that the court's findings of fact are insufficient to permit our review. Because the court's findings of fact are not sufficient to permit us to properly evaluate its legal conclusion, we remand.[1]

Although we find them incomplete, we perceive no error in the findings of fact made in the district court's Memorandum and Order of October 26, 1983. It appears from the record that after the policy was converted to quarterly premium payments in 1977, Roberts was in default every quarter, paying the premium by a combination

---

* Honorable Lee R. West, United States District Judge for the District of Oklahoma, sitting by designation.

1. Plaintiffs propose two bases to affirm the district court's judgment if we reject the district court's conclusion with respect to estoppel. First, plaintiffs argue that Metropolitan solicited and unconditionally accepted the final premium payment in early 1979, thus waiving the forfeiture and reinstatement provisions of the policy. The record, however, is clear that Metropolitan's acceptance of this payment was conditioned upon reinstatement of the policy. R. II at 191–92. Second, plaintiffs argue that Metropolitan obligated itself to inform Mission as the assignee of any default in premium payments, by virtue of an explicit statement promising to do so on a form Metropolitan sent to Mission when the policy was assigned. The district court held that Metropolitan was not obligated by its promise, because there was neither consideration nor reliance. R. I, 142–43. We agree. *See Marker v. Preferred Life Insurance Co.,* 211 Kan. 427, 506 P.2d 1163 (1973).

of a credit for the available loan value of the policy and remittance of the balance due after Metropolitan calculated that amount and notified him of the amount due via Dan Hosfield, the agent who serviced this policy. Each quarter a credit for the loan value would cover approximately sixty percent of the premium. In the four quarters prior to September 1978, payment of the balance due was remitted after the thirty-one-day grace period, on dates ranging up to fifteen days after the end of the grace period. Contrary to written policy provisions, however, Metropolitan did not require a reinstatement application from Roberts in any one of these four quarters.[2]

Roberts thereafter continued his practice of paying premiums by a combination of credit for loan value and cash payment for the balance, remitted after the end of the grace period. On the final occasion, the balance due on premiums for September 1978 and December 1978 was remitted in two installments, on January 12, 1979, by Roberts, and February 22, 1979, by Mission, nearly one hundred days after the end of the grace period for the September payment and six days after the end of the grace period for the December payment.[3]

Metropolitan required an application for reinstatement along with the balance due on the September and December 1978 premiums. Because Roberts was no longer medically insurable, Metropolitan denied the application for reinstatement and issued refund checks to Roberts and Mission in March 1979. Roberts died seven months later in October 1979. Metropolitan refused the plaintiffs' subsequent demand for payment of the proceeds of the policy, and plaintiffs filed the action now before us on appeal.

The Kansas rule of law applicable in this case is well established: "A forfeiture will not be permitted where, by the adoption of a custom or the course of its conduct, the insurer has led the insured member honestly to believe that the assessments may be paid and will be received at times other than those specified in the contract." *Fenn v. Northwestern Nat. Life Ins. Co.,* 90 Kan. 34, 38, 133 P. 159, 161 (1913) (citing cases). It is apparent that the district court decided the instant case with reference to this rule of law. It held Metropolitan liable for the full amount of Roberts' insurance policy, because it found Metropolitan's "conduct was such that Sherman Roberts was justifiably led to believe that his late premium payments would be accepted without fulfillment of the reinstatement requirement, even after the 31–day grace period." R. I, 149. The *Fenn* court's statement of law is incomplete, however, and the proper disposition under Kansas law depends upon the nature of underlying findings of fact that we do not have.

The parties assert different and, based on the record, equally plausible courses of conduct on the part of Metropolitan. Metropolitan asserts that its customary practice amounted to no more than its acceptance of late premium payments from Roberts, establishing an extension of the payment period no longer than its latest unconditional acceptance of a premium payment. The record indicates the latest acceptance of a premium was fifteen days past the grace period. Accordingly, Metropolitan argues, it had not led Roberts to believe that it would accept a premium payment made almost one hundred days past the grace period, and the court erred in concluding otherwise.

**2.** Metropolitan had required that a reinstatement application accompany the premium payment when Roberts was in default on the large annual premium due March 5, 1977. Roberts paid the premium by a combination of credit against loan value and cash payment in July 1977, after requesting a change to quarterly premium payments beginning June 5, 1977.

**3.** The total amount owing on the two quarterly premium payments, as calculated by Metropolitan, was $1854.48. Roberts paid $700 on January 12, 1979, in response to agent Hosfield's suggestion because "that was the usual balance due each quarter." Mission paid the remaining balance of $1154.48 at Hosfield's request on February 22, 1979. This balance also included the interest prescribed by the policy on overdue amounts.

■ If this was in fact the course of conduct between the parties, then Metropolitan's position is correct under Kansas law, and we would be obliged to find the district court's conclusion to the contrary to be erroneous. The insurer is only obligated to accept late payments "if made within a reasonable time after they [become] due." *Runbeck v. Farmers' & Bankers' Life Insurance Co.*, 96 Kan. 186, 188, 150 P. 586, 586 (1915) (citing *Fenn v. Northwestern National Life Insurance Co.*, 90 Kan. 34, 133 P. 159 (1913)). Acceptance of late payments does not extend the time for payment indefinitely, but only for the extension period actively established and shown by conduct. *Conroy v. Grand Lodge of Brotherhood of Railroad Trainmen*, 102 Kan. 757, 761, 171 P. 1161, 1163 (1918).

■ But plaintiffs contend that the course of conduct between the parties involved significantly more on Metropolitan's part than mere acceptance of late premium payments. Instead, plaintiffs argue, Roberts relied on what amounted to an automatic loan against the cash value of the policy, paying the balance when Metropolitan calculated the amount due and notified him of that amount via its agent, Dan Hosfield.

There is support in the record for finding an understanding between Roberts and Metropolitan, through Hosfield, that the agent would ascertain the amount available for a premium loan, arrange the loan, and allow the insured to pay the difference. Hosfield testified that he usually initiated the premium payment process. R. V, 151. He also testified that the Metropolitan home office had to compute the cash amount actually due from the insured, and that Hosfield had to request that information from the home office. R. V, 153. Roberts or, in the last instance, Mission, appears to have paid cash balances due promptly when Hosfield provided the information. R. V, 160–64, 185. If the onus was on the agent to ascertain the actual amount due to keep the policy in effect and if the insured paid when the information

was obtained, then specific dates of late payment are not crucial to Roberts' reasonable reliance on his dealings with Hosfield to keep his policy in effect. This course of conduct between the parties would justify a conclusion under Kansas law that Metropolitan was estopped by its agent's conduct, which it ratified by accepting payments outside the grace period, from requiring reinstatement for the continuation of Roberts' policy.

Although Metropolitan sharply disputes plaintiffs' characterization of its course of conduct, it is for the trial court to evaluate the evidence in the first instance and determine the credibility of witnesses. *See State Distributors, Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 411–12 (10th Cir.1984). From the record, it appears that Hosfield's testimony provides the principal evidentiary basis for both parties' arguments regarding the course of conduct between Metropolitan and Roberts. Metropolitan apparently could not provide any documentary evidence in direct support of his testimony, because Hosfield destroyed his office file concerning his dealings with Roberts after plaintiffs' claim to the proceeds of Roberts' policy was denied by Metropolitan. R. V, 182–83.

In actions tried on the facts without a jury, the trial court must make findings of fact and state separate conclusions of law in accordance with Fed.R.Civ.P. 52(a). To meet the requirements of Fed.R.Civ.P. 52(a), the trial court need only make "findings, stated either in the court's opinion or separately, which are sufficient to indicate the factual basis for the ultimate conclusion." *Kelley v. Everglades Drainage District*, 319 U.S. 415, 422, 63 S.Ct. 1141, 1145, 87 L.Ed. 1485 (1943); *Snyder v. United States*, 674 F.2d 1359, 1363 (10th Cir.1982). But the trial court "must include as many of the subsidiary facts as necessary to permit us to 'determine the steps by which [it] reached its ultimate conclusion.'" *Snyder*, 674 F.2d at 1363 (quoting 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2579 at 710 (1971)). "Where the trial court provides only conclusory findings, un-

supported by subsidiary findings or by an explication of the court's reasoning with respect to the relevant facts, a reviewing court simply is unable to determine whether or not those findings are clearly erroneous." *Lyles v. United States*, 759 F.2d 941, 944 (D.C.Cir.1985) (citing cases).

Although the district court found for the plaintiffs, we cannot tell whether it did so because it accepted the version of the facts that would justify its holding under Kansas law. Accordingly, we VACATE the judgment entered below, and REMAND with directions that the trial court make further findings of fact and conclusions of law regarding the course of conduct between the parties, and then enter judgment in accordance with those findings and conclusions.