No. 25,955.

NELLIE SAUM, *Appellee*, v. GRAND LODGE OF THE ANCIENT ORDER
OF UNITED WORKMEN, *Appellant*.

### SYLLABUS BY THE COURT.

MUTUAL BENEFIT INSURANCE—*Estoppel to Deny Payment.* Where the officer
of a local lodge of a fraternal beneficiary association, who is charged with
the duty of receiving and remitting the assessments of members of his
lodge, makes an arrangement with a member which is acted upon for
many years (a like plan being habitually followed with respect to other
members of this lodge and in many other local lodges) to present to a bank
a receipt for the amount of each assessment as it matures, receiving such
amount in exchange therefor, the member is justified in relying upon that
method of collection being pursued, and is not to be placed in default, re-
sulting in his suspension, by an omission of the local officer to present the
receipt to the bank, when if it had been presented the assessment would
have been paid.

Appeal from Trego district court; JACOB C. RUPPENTHAL, judge. Opinion
filed July 11, 1925. Affirmed.

*M. J. Healy,* of Lincoln, and *Jerry E. Driscoll,* of Russell, for the appellant.
*E. C. Flood* and *E. A. Rea,* both of Hays, for the appellee.

The opinion of the court was delivered by

MASON, J.: Nellie Saum recovered a judgment against the Grand
Lodge of the Ancient Order of United Workmen of Kansas, a fra-
ternal beneficiary association, upon a certificate issued by it to her
husband, who died February 4, 1922. The defendant appeals.

The defense is that a loss of membership resulted automatically
from the failure of the insured to pay an assessment due July 1,
1921. The plaintiff urges as a sufficient excuse for this nonpayment
that in accordance with a well-established custom he had left a sum
of money on deposit at a bank from which the collecting officer of
the local lodge, known as the financier, was to receive the amount
of all assessments as they accrued. The facts are agreed to. The
certificate was issued in 1890, the insured then residing at Wakeeney.
In 1897 he moved to Hays City, and in 1905 to Kansas City. After
his removal he kept on deposit at a Wakeeney bank a sum sufficient
to meet all assessments, under an arrangement with the lodge

Mutual Benefit Insurance, 29 Cyc. p. 177; 4 L. R. A. (N. S.) 421; L. R. A.
1915E, 152; 19 R. C. L. p. 1274.

financier that as each one accrued he was to present a receipt to the bank, receiving the amount due in exchange therefor. This arrangement was acted upon until July 1, 1921. A similar practice had existed for many years with respect to other members of the lodge in Wakeeney and between the financiers and members of many other local lodges in the state. The Wakeeney financier did not present the receipt for the assessment falling due July 1, 1921. An increase in the rate had taken place, and he had written to the insured asking specific directions in view of that circumstance, receiving no answer. His letter was directed to Joplin, Mo., where the insured had formerly been in business. An employee of the bank told him that Joplin was the correct address, but his real address was known to those in authority at the bank. If the financier had presented the receipt to the bank the assessment would have been paid. The insured did not learn of the nonpayment until November 7, 1921, and at that time his health was such as to prevent a reinstatement. The arrangements for collecting dues through banks in the manner described were not made by reason of any authority given by the grand lodge, and no officer of the local lodges gave written notice thereof to the grand lodge.

The defendant urges that the financier in undertaking to present and in presenting the receipts to the bank for payment was acting as the agent of the insured and not of the association, and that the association is under no legal liability with respect to his conduct in that regard. For the plaintiff it is argued that, granting this to be true as to the effect of a single instance or of several isolated instances of making a collection in that manner, the long continued practice had established a course of dealing on which the insured had a right to rely against the association.

While there is some difference of judicial opinion on the subject (19 R. C. L. 1274-5; note L. R. A. 1915E, 152), this court has held that notwithstanding a by-law, which is declared to be incapable of waiver by any officer, and under which the nonpayment of an assessment by a fixed date automatically effects a loss of membership, a member who delays payment beyond that date in reliance upon a custom of the local secretary to extend the time may remain in good standing, and a recovery may be had on his certificate although his death takes place after the time set for payment and before a payment has been made. (*Edmiston v. The Homesteaders,* 93 Kan. 485,

144 Pac. 826, and decisions there followed.)   The question here presented has much in common with that passed upon in the cases just cited.   A local secretary who accepts the payment of an assessment after the person in whose behalf it is offered has ceased to be a member exceeds his authority as obviously as one who assumes to give the insured the privilege of making future payments otherwise than by delivering the money in person.   In a leading case on the subject (*Trotter v. Grand Lodge,* 132 Iowa 513), it was the habit of the local secretary to call at the store of the insured to collect the assessments a few days after they were due, and shortly before remittance was to be made to the grand secretary.   The local secretary was out of town when a payment became due, the nonpayment of which on that day according to the by-laws effected a suspension.   Eight days later, but within the period during which the collection had usually been made and before the monthly collections were remitted, the insured died.   A recovery against the grand lodge was upheld on the ground of a justifiable reliance upon the local secretary's "habitual practice as to the time and manner of collecting the assessments." In a case where the local secretary made a practice of visiting the places of business or homes of members for the purpose of collecting assessments a paragraph of the syllabus reads:

"Nor was any error committed in instructing the jury that if the defendant or its agent, by a course of conduct in transacting its business with its members, led the insured to believe that assessments might be paid in a particular manner and at times other than those specified in the by-laws or contract, it would be estopped to claim a forfeiture because the assessments were not paid strictly at the times and in the manner prescribed in the by-laws." (*Ellis v. Fraternal Aid Union,* 108 Kan. 819, syl. ¶ 3, 197 Pac. 189.)

The local officer of a mutual benefit association who receives and remits the assessments is necessarily the agent of the association in that matter, even though the by-laws may declare otherwise. (*Allen v. Knights and Ladies,* 102 Kan. 128, 132, 169 Pac. 569.)   He is the instrumentality through which the general association deals with individual members in the matter of the payment of dues.   If he should accept as conditional payment a check good when given, but the collection of which was prevented by the failure of the bank on which it was drawn after he had abundant time to present it, doubtless the transaction would constitute a good payment between the member and the association because of the business having been done in the natural and usual way.   (2 C. J. 629, note 39.)   If a

member should give the local officer a series of postdated checks covering all payments for say a year in advance, his omission to present one of them which remained in his hands on the day an assessment matured could hardly be regarded as a failure to pay on the part of the member. So far as practical results are concerned, that method would be substantially the same as the one pursued here. The insured, instead of giving his checks, arranged for the bank to treat each financier's receipt as a check. The method was a natural and convenient one to meet the purposes of both parties.

While of course the local officer might in connection with the collection of assessments undertake and perform some task for the benefit of the members which would not bind the association, no reason is readily apparent why he may not by adopting a particular method of collection establish a course of dealing by which it will be bound if it has knowledge thereof. It is not shown that the grand lodge knew of the existence of the practice here involved except as it may be deemed chargeable with knowledge thereof by reason of its relations with the local financier, and its general supervisory character with respect to the local organization. There is plausibility to the argument that the financier was not a general agent, and that as the course he pursued was outside of his instructions the association could not be held to have had notice of it. The same thing, however, may be said with equal plausibility concerning the want of knowledge by a mutual-benefit society of a practice of a local secretary to accept payment of assessments after their maturity, without authority and in disregard of the by-laws, and some courts have rejected the rule of holding the general organization bound by the local practice on that ground. (See cases cited in note, 38 L. R. A., n. s., 574, second column.) In many cases which support the rule no notice was shown except what might be deemed to follow from facts similar to those here presented. In *Edmiston v. The Homesteaders*, supra, the grand lodge had actual notice of a violation by the local secretary of a by-law requiring the proceeds of collections to be mailed before the fifth of each month, but not of any violation of the by-law in effect forbidding the acceptance of payment after the day set, the payments by members to the local secretary having been made after the time set for payment to the local officer, but before that named for his remittance. The court disposed of that phase of the matter by saying:

"But in our view of the case, plaintiff's evidence established a custom which existed so long that it must be held to have been within the knowledge of the supreme officers of the defendant." (p. 489.)

Of this aspect of the matter it has been said elsewhere:

"It is a matter of current history that many thousands of persons belong to defendant's organization, and that local camps have been established in nearly if not all the states and territories of the United States; and it would be doing violence to common experience and common sense alike to suppose that the defendant did not know that a large per cent of its members were not prompt in the payment of such dues; and that with such knowledge the defendant, as the great majority of those engaged in business do, waived such delinquences and received payments within a reasonable time after date fixed for that purpose." (*Andre v. Modern Woodmen,* 102 Mo. App. 377, 383.)

"And though this course of dealing has been had with inferior officers—officers of the subordinate lodge—without authority to bind the society, yet if it has been carried on in such way or for such length of time as necessarily to have been known to the supreme officers of the general society, it will become binding." (*Shartle v. Modern Brotherhood of America,* 139 Mo. App. 433, 440.)

With regard to the presumed knowledge of the association itself that a member has been engaged in a prohibited occupation it has been said:

"And the fact that the lodge continued for five or six years to collect insurance premiums from him in spite of his prohibited occupation would tend to show either that the supreme lodge was exercising no supervision whatever over the local lodge or did not want to know whether the rules were being obeyed in that respect or not." (*Thompson v. M. B. A.,* 189 Mo. App. 15, 20.)

Having held that a mutual-benefit association may be presumed to have knowledge of a long-continued general custom of the local officer to extend the time of payment of dues fixed by the by-laws, and seeing no logical basis to distinguish upon principle that rule from the one sought to be applied here, we hold that the defendant was chargeable with knowledge of the custom of the lodge financier to collect assessments through the bank. We conclude the district court correctly held that the plaintiff was entitled to recover.

In *Sovereign Camp, W. O. W., v. Newsom,* 142 Ark. 132, an arrangement had been made between Newsom and the local clerk that the latter was to draw upon a bank each month, with a receipt attached, for his dues. This had been acted upon for over a year, a like plan being followed in the case of other members. Through a misunderstanding the clerk did not draw on the bank for the March dues, and Newsom died April 4. It was held (two justices out of five dissenting) that in view of the custom that had been followed

the association could not enforce a by-law making immediate suspension the result of a failure of a member to pay his dues by the day fixed. Cases having some bearing on the question are collected in a note to that case in 14 A. L. R. 920.

Two Kansas cases are cited as in conflict with the view we have expressed, but in each the facts materially differed from those here presented. In one the omission to pay was due to reliance upon an independent club, which was formed to take care of payments for its members, and for which the beneficial association was in no way responsible. (*Anderson v. Knights and Ladies,* 101 Kan. 596, 168 Pac. 842.) In the other case, holding that retention by the society of money paid for reinstatement did not waive the requirement that a certificate of good health should be furnished, it was said, with respect to evidence that a member "was suspended so much of the time that the financier tried to save her insurance by 'putting up' payments for her," that it was not shown the grand lodge knew anything about this practice. (*Gray v. United Workmen,* 111 Kan. 88, 206 Pac. 311.) That evidence fell short of showing such a general custom as existed here.

The circumstance that the insured made no tender of further payments does not prevent a recovery by the plaintiff. He had been advised that he was suspended, and the state of his health precluded his reinstatement on that basis. A tender would obviously have been fruitless. Any bearing that the increase of the rate might have upon the failure of the lodge financier to apply to the bank for the July assessment is rendered unimportant by the admitted fact that the bank would have made the payment if it had been applied to. The association had a by-law (not included, however, in the agreed statement) making it the duty of the lodge financier to refuse to accept payments on behalf of nonresident members otherwise than by mail or from some one authorized in writing to pay it, such authorization to be renewed annually and to show the residence and occupation of the member. We regard this as immaterial for several reasons, among which are that it does not affirmatively appear that the bank's authority to pay for Saum was not in writing, and it does affirmatively appear that it knew his address. There is no suggestion of his having been employed in an occupation affecting his insurance.

The judgment is affirmed.

Burch and Harvey, JJ., dissenting.