No. 26,219.

JOHN W. SALTER et al., *Appellees,* v. THE SECURITY BENEFIT ASSOCIATION, *Appellant.*

SYLLABUS BY THE COURT.

1. MUTUAL BENEFIT INSURANCE—*Payment of Dues—Custom—Evidence.* The evidence is held not to show the establishment of a custom or course of dealing for a local officer of a fraternal beneficiary association to accept dues from members for a stated period after maturity.

2. SAME—*Dues—Authority of Local Officer to Accept Delinquent Payment.* The acceptance by a local officer of a fraternal beneficiary association of dues after membership has been lost by nonpayment does not bind the association, especially under a statute, which has been acted upon, authorizing such associations to adopt by-laws preventing waivers in its behalf by local officers.

Appeal from Butler district court; GEORGE J. BENSON, judge. Opinion filed March 6, 1926. Reversed.

*B. R. Leydig, K. M. Geddes, E. W. Grant,* all of El Dorado, *A. W. Fulton* and *George R. Allen,* both of Topeka, for the appellant.

*Ezra Branine, Alden E. Branine,* both of Newton, and *J. P. Flinn,* of Wichita, for the appellees.

The opinion of the court was delivered by

MASON, J.: The parents of Cora J. Salter, being the beneficiaries of a certificate of the Security Benefit Association issued to her, brought this action against the association upon that certificate. The defendant resisted payment on the ground that by nonpayment of her dues for January, 1923, she had ceased to be a member of the order at the time of her death, which took place at noon of February 1, 1923. The plaintiffs asserted that while the by-laws provided that payment of dues for each month should be made before the expiration of the month, a custom or course of dealing

---

Mutual Benefit Insurance, 29 Cyc. pp. 188 n. 59, 189 n. 65, 193 n. 81, 246 n. 50; 4 L. R. A. n. s. 421; 38 L. R. A. n. s. 571; L. R. A. 1915E, 152; 19 R. C. L. 1274.

had been established for the financier of the local lodge or council —the officer to whom dues were paid—to accept payments at any time before the fifth of each month, when they were sent to the national council. The defendant denied the existence of such custom or course of dealing, but contended that if it had existed it would not render the association liable, because of a by-law covering the ground specifically authorized by a statute enacted in 1917, reading:

"The constitution and laws of any fraternal beneficiary society doing business in Kansas may provide that no subordinate lodge or body, nor any of its subordinate officers or members, shall have the power or authority to waive any of the provisions of the constitution and laws of such society, and the same shall be binding on the society and each and every member thereof, and on all beneficiaries of members." (R. S. 40-703.)

1. Disregarding the statute for the time being we find in favor of the defendant's contention that there is no evidence of the existence of the custom or course of dealing referred to. The disagreement on this point arises largely out of an arrangement of the following character, which was fully and clearly shown by the testimony of the local financier as a witness for the plaintiffs: The local council or lodge undertook to and did protect for one month all the members from loss of membership through nonpayment of dues for that period. The council stood good for the payment, and if by the fifth of the following month (the time for remittance to the national council) a member had not paid, the amount necessary to carry out the plan was deducted from the funds of the local council and added to that to be sent to the national council, each of such members being credited with payment to the association as of the last of the preceding month. The dues were thereby paid and the member became liable to the local lodge for the money it had put up in his behalf. If he met this obligation the local lodge was reimbursed; if not, it was out of pocket by the amount. The local council by a rule formally adopted and regularly acted on became responsible to the national council before the expiration of the month for which the dues were paid, and the relation of the parties was not affected by the circumstance that the money was not sent in until the fifth of the next month. The arrangement was not an extension of the time within which the member might pay his dues and retain his standing. It was an actual and timely payment of dues in his behalf by the local council, which was willing to take the chance of being repaid.

Salter v. Security Benefit Ass'n.

The president of the local council testified that he paid his dues for July, 1921, on the first of the following month. This was within the practice already described—the protection of each member for one month by the local council. He spoke of the practice having been stopped, but did not say when. He said he had no memory of a resolution having been passed establishing it. The secretary's record, however, showed that on February 5, 1917, a motion was carried "that the financier draws of the local council of one month and fines those five cents that are late in the payment of dues." The secretary testified that while this rule stood the local council paid more than one month for delinquent members, and because of its losing money thereby a motion was adopted May 17, 1920, "to carry members not more than one month without payment of dues by members." The president's testimony does not appear to be in real conflict with that of the secretary. Moreover, a single instance of a receipt of dues after the expiration of the month could not establish a custom. A former president told of having paid dues after maturity in 1924, but this could not affect the standing of Cora J. Salter at the time of her death on February 1, 1923. This witness confirmed the evidence of the practice of payments being made by the local council for members.

On January 24, 1923, Cora J. Salter wrote to the financier of the local council saying:

"Did you send my dues for December if so let me know at once do not send my dues for this month for I want a with draw card for i don't see any use of my sending my dues up there so i will pul out."

To this the secretary at once replied:

"I paid the December one for you 1.25. I kept thinking every day that you would send it, and when I made out the report to send in I hated to send you not paid, for you always have kept up so well. So I paid it out of the treasury for you. I hope you will think this thing over again and conclude to keep it up. But if you do not send it by the 5th of February, I will have to send you in."

The father of Cora J. Salter testified over objection that after she had received this letter from the secretary he told her to pay her January dues and she said she would; and that she was sick at that time.

2. The letter of the local financier to the plaintiffs' daughter may be regarded as waiving the prompt payment of dues and extending the time from December 31 to February 5, so far as the local financier had power to make such waiver. "The local officer of

a mutual benefit association who receives and remits the assessments is necessarily the agent of the association in that matter, even though the by-laws may declare otherwise." (*Saum v. Grand Lodge,* 119 Kan. 132, 237 Pac. 885.) But where, as in this case, the by-laws show clearly that it is the duty of the local officer to refuse to accept dues after a default which by its own force severs the member's relation with the order, we prefer the view that the member is charged with notice of that fact and no waiver results. Otherwise there would have been no occasion for the elaborate working out of the rule that by acquiescing in a practice by which dues are customarily accepted by the local officers for a definite time after maturity, payments made within that period bind the association, on the theory that it is presumed to have knowledge of the practice and acquiesced in it. The offer of the local financier to accept the payment at any time up to February 5, being but a single instance of the sort, did not effect a valid extension of time and keep the plaintiffs' daughter in good standing up to the time of her death on February 1. But if there is any substantial doubt of the soundness of this proposition in the absence of any legislation on the subject, the section of the statute already quoted appears to us to put the matter beyond dispute. We think one of the obvious purposes of the statute was to protect fraternal benefit associations from the liability which would otherwise result from the unauthorized action of local officers in accepting payments after default, although not confined to that specific phase of the general subject. There are decisions to the contrary, but we do not find them persuasive. In *Calhoun v. The Maccabees,* (Tex.) 241 S. W. 101, there were strong equities in favor of the claimant, and this may have influenced the result. The ruling was placed upon the fact that the local officer was the agent of the association, a consideration which as already indicated we do not regard as in itself controlling. The *Maccabees v. Johnson,* (Tex.) 273 S. W. 612, is of like character. In *Sovereign Camp W. O. W. v. Newsom,* 142 Ark. 132, a local practice was relied upon as keeping in good standing a member who died without having made a timely payment. The court held a statute like that here invoked not to affect the matter because the principle on which the practice prevented a loss of membership was estoppel and not waiver and the statute mentions only the latter. We think this is too fine a verbal distinction and results in denying to the

statute the force which is clearly intended. While estoppel is doubtless the more appropriate word in this connection, waiver is often used without causing any misunderstanding. For instance in *Edmiston v. The Homesteaders*, 93 Kan. 485, 144 Pac. 826, while the syllabus accurately speaks of a custom of receiving dues after maturity as estopping the association, in the body of the opinion (p. 489) it is said that the sole question is whether the association waived the provision of its by-laws.

The defendant cites many cases in which the validity and effectiveness of such statutes as that here relied upon have been upheld where loss of the standing of a member was asserted on some ground other than a failure to pay dues promptly. In the following cases that ruling has been made where delinquency in payment was in issue, in the first two instances a custom of accepting deferred payments being involved: *Sternheimer v. O. U. C. T. A.*, 107 S. C. 291; *Bryant v. Sovereign Camp W. O. W.*, 29 Ga. App. 359; *Barganier v. Knights of the Maccabees of the World*, 147 La. 409; *Davis v. Knights & Ladies of Security*, 196 Mo. App. 485; *Grayson v. Grand Temple, etc.*, (Tex. Civ. App.) 171 S. W. 489.

The by-law of the defendant providing that no subordinate lodge or officer thereof shall have power to waive any law of the association was adopted prior to the enactment of the statute, and a suggestion is made that the statute applies only to one adopted after its enactment. We think it gave statutory support to a law of the society already in existence.

It is also suggested that the statute should be strictly construed because in derogation of the common law. The ordinary rule in that respect, however, is not in force in Kansas. (R. S. 77-109.)

The judgment is reversed with directions to render judgment for the defendant.