CORNELIA B. KNOX, Guardian, v. FRATERNAL AID UNION.

Western Section. November 30, 1925.

No petition for Certiorari was filed.

1. **Appeal and error. Appellate courts will not consider anything not part of record below.**
Bills of exception must within statutory time be both authenticated and filed and appellate court cannot consider anything that is not shown to have been a part of the record below.

2. **Insurance. Fraternal Insurance. Statute gives fraternal insurance societies right to forbid subordinates to waive provisions of laws of society.**
By statute in Tennessee any fraternal insurance society may pass a by-law prohibiting any subordinate officer or body from waiving any provision of the laws of the society and where a society passes such a by-law no acts of agents or subordinates can constitute a waiver on the part of the society.

3. **Insurance. Fraternal insurance void if premium not paid when due.**
In an action to recover on a fraternal insurance policy where the defense was non-payment of premiums, held where a life insurance policy provides that it shall lapse and be void if the premiums thereon are not paid when due, it is well settled that such policy will be forfeited if the premiums are not paid as stipulated.

4. **Insurance. Evidence held to show policy had lapsed.**
Where policy and by-laws of order provided that if premiums was not paid each month the policy would lapse and be void and holder failed to pay premiums for two months, held policy was void.

5. **Insurance. Waiver. Action of agent held not to waive provision for time to pay premium.**
In an action to recover on fraternal insurance policy where the defense was nonpayment of premiums, the fact that agent of the society had in past

months permitted deceased to have until the 12th of the month to pay his premium which was due the first, held not to waive the provision requiring premiums to be paid the first of the month where it appeared that agent had no authority to extend time and by-laws prohibited it.

Appeal from Circuit Court of Shelby County; Hon. Ben Capell, Judge.

Affirmed.

L. T. Fitzhugh, of Memphis, for plaintiff in error.

Austin J. Calhoun, of Memphis, for defendant in error.

OWEN, J.   Cornelia B. Knox, Guardian of Virginia Knox, has appealed from a judgment rendered against her in the circuit court of Shelby county for costs.   The suit was instituted to recover $3000 on a benefit certificate issued on the life of the late Miles S. Buckingham, the grandfather of Virginia Knox.   It appears that the certificate was first issued by the Supreme Lodge, Knights and Ladies of Honor, and was later assumed by the Fraternal Aid Union. The declaration alleged that Miles S. Buckingham died December 22, 1919 at his home in Memphis, Tennessee.   That due notice of the insured's death was given to the defendant during the month of December, 1919, but the defendant, through its officers and agents in charge of the local lodge had denied liability as alleged by the declaration and the plaintiff instituted her suit.   To the declaration, which is short, and contains but one count, the defendant filed a plea alleging that it did not owe the plaintiff anything, and the defendant filed a special plea setting up the by-laws of the defendant company, and insisting that by said by-laws the deceased, or insured, had forfeited his certificate by non-payment of monthly assessment and dues as required in the contract, said plea alleging that the insured had agreed that "he would be bound and have his membership controlled in all respects by the laws of the Fraternal Aid Union as the same now exists, or as they may hereafter be enacted or amended."

To the plea of the defendant plaintiff filed her replication, claiming that the officers and agents of the local lodge had by long course of conduct in accepting overdue assessments waived the provisions as to time of payment on same, and alleged that monthly assessments and dues were paid to and accepted by the officers of the local lodge from one to twelve days after becoming delinquent, and that Mr. Buckingham died in the belief that the officers in the local lodge would take care of the assessments.   To this replication the defendant association filed a rejoinder, setting up the following provision of the contract sued upon:

"Section 106.   No officer or member of the Supreme Lodge except the Supreme President by dispensation, nor any local or subordin-

ate lodge or any officer or member thereof, or any organizer, deputy or agent shall have authority to change, alter, modify or waive any of the provisions of this constitution.''

The pleadings set up no allegation of waiver or estoppel on the part of the Supreme Lodge, and defendant insists that there is no proof to support such claim. The trial judge, in directing a verdict for defendant, rather clearly stated the case.

With the issues thus formed, the same was submitted to the court and jury and at the conclusion of the plaintiff's evidence, there was a motion for a directed verdict in behalf of the defendant, which was sustained. The plaintiff seasonably filed a motion for new trial, which was overruled, to which plaintiff excepted, prayed and was granted an appeal to this court, had signed and filed a proper bill of exceptions, and has assigned here six errors.

The sixth error governs the entire matter, and we quote from it as follows:

''It was error upon the part of the circuit judge to direct a verdict in favor of defendant in error and to hold that the statute relied upon by the defendant in error applied in a case of this kind where the parties had made a new agreement.''

It is the plaintiff's insistence that the defendant had accepted dues and assessments from one to twelve days late for at least two years, and that the last receipt issued by the Supreme Lodge bore a date later than that required by its constitution and by-laws. While the declaration alleged that Mr. Buckingham died on December 22, 1919, the proof shows he died on December 10th of the same year. He made a monthly payment to the local secretary of the defendant. This local secretary was a Miss Green and lived in Memphis, Tennessee. It appears that the insured had to pay his dues or assessments to be in good standing, by the last day of the month for which he was assessed;—that is to say, that in November, 1919, the dues had to be paid on the last day of November. However, it appears that Miss Green, the secretary, had until the 15th of the following month in which to have her remittances or collections reach the Home Office of the defendant which was located in Lawrence, Kansas.

There is proof to show that Mr. Buckingham usually paid around the 10th of the month. He paid on the 2d of October, 1919, for the month of September. He never paid anything for October nor November. Plaintiff insists that the insured did not receive any notice of forfeiture prior to his death. Plaintiff relies upon the following propositions of law:

''First: Forfeitures are not favored by our courts, and will not be enforced against equity and good conscience. Mrs. Ella C. Cunningham v. Independent Order of Forresters, 127 Tenn., 521.''

"Second: The fact that the local secretary whose business it was to solicit members of the Lodge and to collect and forward assessments to the Supreme Lodge, and who, while acting as the agent of the Supreme Lodge, within the general scope of her apparent authority, agreed with the assured that she would call and collect the assessments and that he need not worry about such matters, constituted a new agreement between the parties, and the Supreme Lodge is bound by said agreement, having acquiesced in and ratified same by its acts and conduct.

"Third: Forfeitures may be waived by officers or agents of mutual benefit insurance associations as well as by those of regular insurance companies."

"Fourth: The statute relied upon by defendant in error has no application in a case where the proof shows a new agreement arising from the conduct of the parties, or where the Grand Lodge and its officers and agents had knowledge of and had ratified the course of conduct of the officers of its local lodge.

"Fifth: Local lodges are treated as general agents of the Grand Lodge and such local lodge may, for the Grand Lodge, waive provisions of insurance policies.

"Sixth: Fraternal benefit societies may waive contract provisions notwithstanding by-laws and provisions of contract denying to a local camp or the officers thereof the power to waive provisions of the contract."

"Seventh: The burden of proof is upon the defendant in error to prove a forfeiture upon the part of the assured. Kidd v. National Council, 37 Tenn., 398."

It appears that the defendant took over the Knights and Ladies of Honors' obligations in the year of 1916 or 1917. It appears that, in the lower court, certain documents and by-laws, and the certificate sued on were made exhibits to the testimony of Judge L. T. Fitzhugh when he was being cross-examined, he being plaintiff's witness. On page 55 of the record, we find the following: "Said certificate is accordingly filed herewith as Exhibit 'A' to the plaintiff's testimony attached hereto. The clerk will please send up original certificate."

In another part of Judge Fitzhugh's testimony we find the following: "Q. Do you offer this? A. If it was a genuine copy of it I had the original. Q. It is testified to by the supreme secretary. A. If that purports to be a genuine copy, I am willing that it should be introduced in evidence. Said copy of certificate was accordingly introduced in evidence, marked Exhibit B to the testimony of the witness, and is attached hereto. The clerk will please send up original. Q. Well, now, this copy provides (membership and assumption certificate) 'The member warrants the statements made in

his medical examination and application for membership to be true; that he is now in good standing and will make payment of his assessements in the amount, time and manner fixed by law; that he will be bound and have his membership controlled in all respects by the laws of the Fraternal Aid Union, as the same now exists, or as they may be hereafter enacted or amended.' Now, will you, in order to offer in evidence the complete contract, furnish—offer in evidence a copy of the constitution and laws of this defendant? A. Haven't you already done so in your deposition? Q. They haven't been offered. A. If the constitution and by-laws are a part of the contract, I think they are properly in evidence with the contract of insurance. If you have a copy of them, I am willing that they shall be introduced. Q. And are regarded as in evidence now? A. Yes, sir. MR. CALHOUN: That is all."

After the bill of exceptions was signed by the trial judge, which appears on page 72 of the record, we find a document pasted on page 73 of the record, and at the bottom of the page there appears "Exhibit A plaintiff's testimony." This document was not filed in the lower court and it is not identified by the trial judge. It is headed: "Membership and Assumption Certificate Issued by the Fraternal Aid Union." There appears on the next page of the bill of exceptions at the bottom the following: "Exhibit B to plaintiff's testimony, Ben L. Capell, Judge;"—that is, the Judge signed the page. This document is a certificate issued by the Supreme Lodge, Knights and Ladies of Honor to Miles S. Buckingham. It was not filed in the court below. On the next page of the transcript, we find a printed document, the constitution and laws of the Knights and Ladies of Honor. This is noted "S.S. B. & C., Ben L. Capell, Judge," but it was not filed in the court below; and on the next page we find a printed book called the Constitution of the Fraternal Aid Union and noted on it is "S.S. B. E. & D. C. C. S. E. & D., Ben L. Capell, Judge," but this was not filed in the court below, and following the rule announced in the case of Insurance Company v. Anderson, it is doubtful whether we can consider any of these documents now. In that case the Supreme Court said: "On looking to the document sent up, we find none of them identified by the trial judge. True they are referred to in the bill of exceptions as Exhibits A. B. C. etc., but none of them appear to have been filed in the court below. So that if they could otherwise be treated as part of the bill of exceptions, with such doubtful identification by the trial judge, still never having been filed in the court below they cannot be looked to here. Bills of exceptions must within the statutory time be both authenticated and filed, and we can not consider anything in this court that is not shown to have been a part

of the record below.'' Citing Dunn v. State, 127 Tenn., 267; Insurance Company v. Anderson, 130 Tenn., 489.

In the instant case, as the trial judge has identified the exhibits, and they are referred to by the witnesses and many of the sections from these exhibits are copied into the transcript, we have considered all of the exhibits in passing upon this appeal. We find, however, from the record, that the insured was to pay his dues monthly and the plaintiff is relying upon custom, or an agreement or understanding that the insured was to have from one to twelve days following his delinquency or suspension in which to pay.

Judge Capell, in directing the jury to return a verdict in favor of the defendant, said:

''Gentlemen, in this case I am unable to bring my mind to the determination that there is any question of fact to submit to the jury. It is contended in this case that the action of the secretary of the local lodge in collecting dues for the previous month from ten to twelve days after the expiration of that time works a forfeiture or waiver, or right of forfeiture for the non-payment of premiums.

''We have a statute in this State, in my judgment, if it means anything, it is this: That there cannot be such a waiver by the secretary of a subordinate lodge in fraternal insurance. Giving force and effect to that statute, why, it would settle the question; but going beyond the statute and taking the facts as I have them here—assuming that the course of conduct had been for twenty-four or five months—that because the premium was in arrears from ten to twelve days no forfeiture was insisted upon at any time by the defendant, does that course of conduct give the plaintiff a right to say that the premium should be in arrears a much longer time than that by reason of the fact that the evidence here is that the September—the October and November premiums were not paid, and Mr. Buckingham died on the 10th of December? I think that giving force and effect to that conduct that if the premium for October had been paid and the premium for November had been paid, and have been since—or within the ten days limit that the course of conduct indicated that there would be no forfeiture, that probably that conduct, if we didn't give any force and effect to the statute, would be binding on the defendant. But I don't think that where the premium is not paid for October and November that the course of conduct of the secretary in accepting premiums from ten to twelve days, as the proof here is, would amount to a waiver or estoppel of the right of forfeiture.''

The statute in Tennessee to which the trial judge referred is the law in regard to fraternal insurance societies and was enacted in 1905 and also reenacted in 1921. Said law provides that the constitution and by-laws of the society may provide that no subordinate

body or any of its subordinate officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries of members. It appears that sections 67 and 69 of the defendant's by-laws were read to the court and they are as follows:

"Failure to pay assessments and dues chargeable during each calendar month shall, of itself and without notice of any kind, automatically suspend such member for failing to pay the same before midnight on the last day of any such calendar month and all rights accruing to any such member so failing to pay, and all rights accruing to his beneficiary or beneficiaries, shall be wholly void, and such member can be reinstated to beneficiary rights in this association only, as provided by the laws of the association."

"Section 69. If any and all monthly payments and local lodge dues from any member are not paid on or before the last day of the month for which same are due and payable on ordinary certificates, or if any and all payments and local lodge dues from any member holding a certificate providing for paid up and extending insurance and local values, or a limited pay certificate, are not paid on, or before the first day of the month on which same are due and payable, his benefit certificate shall be absolutely null and void, and of no effect, and shall so remain, unless such member, within six months from the time of becoming delinquent shall comply with the following conditions."

Our Supreme Court in the case of Pacific Ins. Co. v. Galbraith, 116 Tenn., page 471, held that where a life insurance policy provides that it shall lapse and be void if the premiums thereon are not paid when due, it is well settled that such policy will be forfeited if the premiums are not paid as stipulated, citing Ressler v. Life Ins. Co., 110 Tenn., 411; Thompson v. Life Ins. Co., 104 U. S., 252.

It is true that the courts do not favor forfeitures if they can be avoided, but where the policy provides that the failure to pay assessments and dues chargeable during each calendar month that, of itself, and without notice of any kind, automatically suspend such member failing to pay. All rights accruing under the policy shall be void unless the member is reinstated as provided by the rules of the association, is an enforceable contract, and in the instant case we are of opinion that if Mr. Buckingham had paid his assessments between the first and 10th of December for November, the collector of the local lodge would have reported him in good standing, but we hardly see how the law can be stretched so as to hold that he was in good standing when he had failed to pay for October and November. Cases similar to the instant one have been passed upon by our Supreme Court and we refer to some of such cases.

In the case of Simmons v. Sovereign Camp, W. O. W., 136 Tenn., 233, the defense was that member joined in Arkansas when he was a farmer, and until his death paid the rate of assessment based on that occupation. He moved to Tennessee and became a locomotive fireman without giving notice within thirty days required of those entering a hazardous occupation, and without paying the increase in assessment. He was killed while working at his occupation. The by-laws provided that if members making change did not notify the clerk of camp of change of occupation, his certificate should be void. There was some evidence tending to show that about six months after the lapse of the thirty-day period, notice was given to the local clerk, but knowledge on the part of Sovereign Camp officials was negatived.

The court quotes section 24, chapter 480, Acts of 1905, and says: "There is some evidence tending to show that about six months after the lapse of the thirty-day period, notice was given to the clerk of the local camp of the change in occupation; but knowledge of acquiescence on the part of the sovereign officials was negatived."

"We think it manifest that there can be no recovery; and that the motion was (for) peremptory instructions interposed by the order should have been sustained, on the ground that it was not within the power of the local camp or its clerk to waive the forfeiture provision.

"It is competent for an order of the character of this kind, to thus limit the authority of their subordinate local agents, and when this is done such agents cannot by any acts, of estoppel or waiver, nothing else appearing, bind the association."

Plaintiff's counsel relies upon the case of Cunningham v. Forrester, 127 Tenn., page 521. This case is discussed by Mr. Justice Williams in delivering the opinion in the case of Simmons v. Sovereign Camp, W. O. W., supra, and we quote from said opinion, as follows:

"This case is clearly to be differentiated from Forresters v. Cunningham, 127 Tenn., 521, 156 S. W., 192. In that case it appeared that the act of waiver or estoppel was that of a deputy supreme chief ranger, with headquarters in Nashville, and that he 'was invested with all the authority and power which pertain to the chief executive officer of the order within the territory over which he had jurisdiction.' The court held in favor of the beneficiary, since that officer exercised the power of the sovereign camp insofar as the act relied upon as a waiver was concerned."

In the case of Hale v. W. O. W., 143 Tenn., 444, Mr. Chief Justice Green, delivering the opinion of the court, said:

"Notwithstanding all such provisions it is still within the power of the sovereign camp of defendant society to waive the provisions of its contract with the assured that are relied upon. . . .

"There is no question here of an attempt to waive any provision of a contract by a subordinate lodge or any officer thereof."

The case of Simmons v. Sovereign Camp W. O. W., 136 Tenn., 233, 188 S. W., 941, is not in point at all. There was an effort there to predicate an estoppel or waiver on the acts of one of the defendant's local camps."

Thus it will be seen in the Hale case the waiver was made by the Sovereign Camp—that is, the head office—and there was no insistence that the waiver was made by a subordinate lodge or an officer of a subordinate lodge. In Brittenham v. Sovereign Camp, 167 S. W., 587, speaking of forfeitures, the court said:

"Such forfeiture provisions should be strictly construed against the insurer, but a strict construction does not mean one that is unreasonable, unwarranted, unjust and oppressive. Some regard must be paid to the rights of the living as well as to those of the silent dead."

There is no proof in the instant case that any of the officers of the Supreme Lodge of this society waived anything. The whole case is founded on the custom of Miss Green, the local collector. It is shown that by section 99 of the by-laws of the defendant company that "in the event of the failure of the local secretary to remit to the Supreme Lodge moneys collectd as provided in this constitution, such lodge and all the members thereof shall stand suspended on the fifteenth day of the month in which the same should have been remitted. . . ."

So it appears that Miss Green knew she had until the 15th of each month to make remittances that would keep the members who were reported in good standing, otherwise they would be forfeited after the 15th. In construing contracts similar to the one sued on between the beneficiary and the society, there is a distinction between contracts of insurance written by what is termed "old line companies,"—companies that exist for profit—and fraternal insurance. The fraternal insurance society exists by mutual agreement of the members thereof, and each member is directly interested in each certificate written. There is that mutuality that doesn't exist in insurance companies that operate for a profit to the stockholders, and an insured who is a member of the society as in the instant case, subscribes to the conditions of the by-laws or laws of the society is bound thereby, and wherein the laws provide that the insurance must be paid at a certain date or the policy is forfeited, the courts are compelled, when no payment is made within the time prescribed, to enforce the forfeiture of the member and relieve the society of any liability.

It results that the assignments of error are all overruled and disallowed and the judgment of the lower court is affirmed. The costs of the lower court will be paid as adjudged by the trial judge. Execution will issue against the plaintiff and her surety on appeal bond for the costs of the appeal.

Heiskell and Senter, JJ., concur.