IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 18, 2005 Session

## JUSTIN L. THURMAN v. JUSTIN E. HARKINS, ET AL.

**Direct Appeal from the Circuit Court for Fayette County**
**No. 4294     Jon Kerry Blackwood, Judge**

---

**No. W2004-01023-COA-R3-CV - Filed May 23, 2005**

---

This case involves a question of whether an insurance policy covers the injuries sustained by the plaintiff under the facts of this case. The original suit filed by plaintiff against Justin Harkins, Andrew Keon, and James Keon was settled out of court, leaving Great River Insurance Company, an unnamed defendant. After granting the plaintiff's motion for declaratory and partial summary judgment on whether the plaintiff was a covered insured under the policy, the parties agreed to send the matter to arbitration. The arbitrator returned an award in favor of the plaintiff, and the trial court confirmed the award but reduced the amount, accounting for the insurance policy's limit. The trial court also awarded the plaintiff pre-judgment interest but stated that the total award to the plaintiff could not exceed the limit in the insurance policy. Great River Insurance Company appealed to this Court, and the plaintiff filed a cross-appeal. For the following reasons, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Paul Campbell, III, Chattanooga, TN, for Appellant Great River Insurance Company

Jason G. Whitworth, Lyle Reid, Covington, TN, for Appellee Justin Thurman

**OPINION**

**Facts and Procedural History**

On or about August 5, 2000, Justin Thurman ("Thurman" or "Appellee") was a passenger in a 1997 Oldsmobile, traveling on Harrell Road in Fayette County, Tennessee. Justin E. Harkins was operating the Oldsmobile, and it was owned by James R. Keon, who permitted Andrew Keon to use the vehicle. Andrew Keon, who was an additional passenger at the time, in turn, permitted Justin Harkins to operate the Oldsmobile. While driving, Justin Harkins lost control of the vehicle,

running off the road resulting in a single-car accident. Justin Harkins, James Keon, and Andrew Keon were uninsured/underinsured motorists at the time of the accident.

At the time of the accident,[1] Lorrie and Leslie Corban, Thurman's mother and stepfather, held a commercial insurance policy (the "policy") with Great River Insurance Company ("Great River" or "Appellant") under their business name, L & L Roofing & Construction Company and their own names. The insurance policy provided coverage for uninsured/underinsured motorists with a limit of $500,000.00, designating the covered automobiles under a "code 2." In its Business Auto Coverage Form, "code 2" is defined as

> owned "autos" only. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

In an additional form entitled Tennessee Uninsured Motorists Coverage ("UM Coverage Form"), it states that the provisions of the Coverage Form apply unless modified by the UM Coverage Form.

> The UM Coverage Form provides the following coverage:
> [Great River] will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured", or "property damage" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

The UM Coverage Form next defines the persons included as an "insured":
> B. Who Is Insured
> 1. You.[2]
> 2. If you are an individual, any "family member".
> 3. Anyone else occupying a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.
> 4. Anyone for damages he is entitled to recover because of "bodily injury" sustained by another "insured".

"Family member" is defined in the policy as a "person related to you by blood, marriage or adoption, who is a resident of your household, including a ward or foster child." Great River admitted that Thurman was a "family member" of his mother, Lorrie Corban, as defined in the policy.

---

[1] The policy had an effective period of May 31, 2000, to May 31, 2001.

[2] In the Business Auto Coverage Form, it states that the words "you" and "your" refer to the named insureds on the declarations page, and "we," "us," and "our" refer to Great River.

Thurman filed a complaint[3] against Justin Harkins, Andrew Keon, James Keon, and Great River.[4]  Thurman reached a settlement agreement with Justin Harkins, Andrew Keon, and James Keon, wherein State Farm Insurance Company agreed to pay its policy limit of $50,000.00 for the release of these defendants.  Thurman filed a motion for declaratory and partial summary judgment requesting the trial court to find Thurman was an "insured" under the policy with Great River.  The trial court granted Thurman's motion, finding that Thurman was an insured under the policy and that the limit of liability insurance coverage was $500,000.00.  The matter was sent to arbitration, and the arbitrator determined that Thurman suffered damages in the amount of $3,153,684.15.  In its final order, the trial court adopted the arbitration award, applied the maximum limit of liability stated in the insurance policy, gave Great River a credit for the $50,000.00 paid by State Farm Insurance Company, and ordered Great River to pay Thurman $445,000.00[5] plus pre-judgment interest provided the total award did not exceed $450,000.00.[6]  Great River now appeals and presents the following issue for our review:

> I.      Whether the insurance policy provided uninsured/underinsured motorist coverage for the plaintiff under the circumstances of this case.

Additionally, on a cross-appeal, Thurman presents the following issue:

> II.     Whether the trial court erred when it limited the award of pre-judgment interest such that the total award could not exceed the policy limit minus the amount of the prior settlement received.

For the following reasons, we affirm.

## Standard of Review

Contract interpretation presents an issue of law.  *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999) (citing *Hamblen County v. City of Morristown*, 656 S.W.2d 331, 335-36 (Tenn. 1983)).

---

[3]     Thurman later amended his complaint to include a request for pre-judgment interest.

[4]     Great River is an unnamed, but served, defendant in Thurman's lawsuit designated the uninsured/underinsured motorist carrier.

[5]     As best this Court can determine from the record, the trial court applied the $50,000.00 credit to the amount of $495,000.00 because Thurman drafted an "offer of judgment" to Great River in March 2002 for the amount of $495,000.00.

[6]     Though the policy contained a limit of $500,000.00 for uninsured/underinsured motorist coverage, the trial court did not permit the award to exceed $450,000.00 because of the $50,000.00 settlement already received by Thurman.

As such, our review on appeal of this issue is *de novo*. *Id*. (citing *Hamblen County*, 656 S.W.2d at 335-36). All other questions of law are reviewed *de novo* affording no presumption of correctness to the trial court's conclusions of law. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)). "[R]eview of findings of fact by the trial court in civil actions shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d) (2004).

## Coverage of the Insurance Policy

Great River argues that the trial court erred when it determined that the insurance policy provided Thurman uninsured/underinsured motorist coverage. Specifically, Great River argues that, because the policy involved is a business policy, as opposed to a personal policy, the coverage should be tied to the vehicles for which the policy lists coverage.

We begin by noting that an insurance policy is subject to the same rules of enforcement and construction applied to contracts in general. *Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, 773 (Tenn. 2004) (citing *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000)); *Quintana v. Tenn. Farmers Mut. Ins. Co.*, 774 S.W.2d 630, 632 (Tenn. Ct. App. 1989) (citing *Great Am. Life Ins. Co. v. Armstrong*, 185 S.W.2d 505, 507 (Tenn. 1945)). When presented with an issue of contract interpretation, we must review the contract and make our own independent determination of the contract's meaning. *Hyde v. Ishikawa Gasket Am., Inc.*, No. M2002-02653-COA-R3-CV, 2003 Tenn. App. LEXIS 896, at *7 (Tenn. Ct. App. Dec. 22, 2003) (citing *Cagle v. Cagle*, No. 02A01-9710-CH-00265, 1998 Tenn. App. LEXIS 776, at *7 (Tenn. Ct. App. Nov. 18, 1998)).

The cardinal rule for interpreting a contract is to determine the intention of the parties and give effect to that intention. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975) (citing *Petty v. Sloan*, 277 S.W.2d 355 (Tenn. 1955)). We must construe an insurance policy fairly and reasonably, giving the language its usual and ordinary meaning. *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993); *Quintana*, 774 S.W.2d at 632 (citing *Parker v. Provident Life & Accident Ins. Co.*, 582 S.W.2d 380, 383 (Tenn. 1979); *Metro. Life Ins. Co. v. Smith*, 554 S.W.2d 123, 128 n.4 (Tenn. 1977); *Dixon v. Gunter*, 636 S.W.2d 437, 441 (Tenn. Ct. App. 1982)). Our duty is to enforce a contract according to its plain terms. *Bob Pearsall Motors, Inc.*, 521 S.W.2d at 580 (citing *Eleogrammenos v. Standard Life Ins. Co.*, 149 S.W.2d 69 (Tenn. 1941)). But when there is doubt or ambiguity as to meaning, an insurance contract must be construed favorably to the insured; however, courts will not create a new contract for the parties. *Berry v. Prudential Ins. Co. of Am.*, 134 S.W.2d 886, 889-90 (Tenn. Ct. App. 1939) (citing *U.S. Stove Corp. v. Aetna Life Ins. Co.*, 84 S.W.2d 582 (Tenn. 1935); *Moore v. Life & Cas. Ins. Co.*, 40 S.W.2d 403 (Tenn. 1931); *Green v. Fid. & Guar. Co.*, 185 S.W. 726 (Tenn. 1915); *Seay v. Ga. Life Ins. Co.*, 179 S.W. 312 (Tenn. 1915); *Knox v. Fraternal Aid Union*, 1 Tenn. App. 317 (Tenn. Ct. App. 1925)); *Bob Pearsall Motors, Inc.*, 521 S.W.2d at 580 (citing *Dubois v. Gentry*, 184 S.W.2d 369 (Tenn. 1945)).

-4-

Great River argues that the insurance policy held by L & L Roofing & Construction Company and Leslie and Lorrie Corban does not provide uninsured/underinsured motorist coverage to Thurman because no "covered auto" was involved in the accident. We disagree. We begin by examining the declarations portion of the policy. After naming the insureds, the declarations page states the following:

> This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos"[7] shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO section of the Business Auto Coverage Form next to the name of the coverage.

Under the coverage section for uninsured and underinsured motorists, it states that the "covered auto" for such coverage is a "code 2." "Code 2" is defined as

> owned "autos" only. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

The two listed "owned autos" for the insured are a 1995 Chevrolet Diesel and a 1990 Dump Trailer. Great River also directs our attention to a provision in the Business Auto Coverage Form discussing *liability* coverage which states as follows:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury"[8] or "property damage"[9] to which this insurance applies, caused by an "accident"[10] and resulting from the ownership, maintenance or use of a covered "auto".

Further, Great River brings to this Court's attention the provision in the UM Coverage Form which states that the endorsement modifies insurance provided under the Business Auto Coverage Form "[*f*]*or a covered 'auto'* licensed or principally garaged in, or 'garage operations' conducted in, Tennessee. . . ." (emphasis added). Great River argues that, when taken together, these provisions demonstrate the intent of the parties to tie uninsured/underinsured motorist coverage to "owned

---

[7]  "Auto" is defined in the policy as "a land motor vehicle, 'trailer' or semitrailer designed for travel on public roads but does not include 'mobile equipment'."

[8]  "Bodily injury" is defined in the policy as "bodily injury, sickness or disease sustained by a person including death resulting from any of these."

[9]  "Property damage" is defined in the policy as "damage to or loss of use of tangible property."

[10]  "Accident," for purposes of the policy, "includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage'."

autos" which are listed as the "covered autos" on the declarations page.  Therefore, Great River contends that, because neither of the "covered autos" were involved in the accident, Thurman should be denied coverage.

However, the UM Coverage Form further provides that "[t]his endorsement provides bodily injury and property damage uninsured motorists insurance unless and [sic] 'X' is entered below." No "X" was entered, and, therefore, the policy provides uninsured motorist insurance coverage for both bodily injury and property damage.[11]  Further, the UM Coverage Form contains the following pertinent provision with respect to coverage:

> We will pay all sums the "insured"[12] is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle".[13]  The damages

---

[11]     Though the policy does not appear to modify the definition of "bodily injury," the UM Coverage Form does modify the definition of "property damage" as follows:

> 1. "Property damage" means injury or destruction of:
>      a. A covered "auto";
>      b. Property contained in the covered "auto" and owned by you or any "family member";
>      c.  Property contained in the covered "auto" and owned by any else "occupying" the covered "auto".

[12]     As noted above, "insured," for purposes of the UM Coverage Form, is defined in the policy as follows:

> B.  Who Is Insured
> 1.  You.
> 2.  If you are an individual, any "family member".
> 3.  Anyone else occupying a covered "auto" or a temporary substitute for a covered "auto".  The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.
> 4.  Anyone for damages he is entitled to recover because of "bodily injury" sustained by another "insured".

Further, Great River has previously stipulated that Thurman is a "family member" for purposes of the policy.

[13]     The UM Coverage Form defines "uninsured motor vehicle" as follows:

> "Uninsured motor vehicle" means a land motor vehicle or trailer:
> (1) For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;
> (2) That is an underinsured motor vehicle.  An underinsured motor vehicle is a motor vehicle or trailer for which the sum of the limits of liability available for payment to an "insured" under all policies, bonds and securities applicable at the time of the accident, is less than the Limit of Insurance for this coverage;
> (3) For which an insuring or bonding company denies coverage or is or becomes insolvent; or

(continued...)

-6-

must result from "bodily injury" sustained by the "insured", or "property damage" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

Applying the definitions of the policy for "insured" and "uninsured motor vehicle," the language of the UM Coverage Form, on its face, provides coverage to Thurman for the "bodily injuries" he sustained as an "insured." Nothing in this language suggests, as Great River argues, that a "covered auto" must be involved in the event in order for Thurman to be covered by the policy as an "insured." Further, under a section outlining the limits of the UM Coverage Form, it states as follows:

> The most we will pay for all damages resulting from "bodily injury" to an "insured" *when the "insured" is "occupying" an "auto" not owned by the insured, or is not "occupying" any "auto", is the highest limit of uninsured motorists coverage on an "auto" owned by the "insured"*.

(emphasis added). Thus, from the UM Coverage Form, which modifies the policy as a whole, not only does Thurman's accident at issue appear to fall within the plain language outlining the coverage of the UM Coverage Form, but the section outlining the limits of the UM Coverage Form states that the policy covers the exact fact situation of Thurman's accident, that being that he sustained bodily injury while occupying an automobile not owned by him or Leslie or Lorrie Corban. Therefore, we cannot say that the trial court erred when it determined that Thurman's injuries are covered by the policy of insurance with Great River.

## Pre-Judgment Interest

---

[13](...continued)
(4) That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must either:
(a) Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or
(b) Cause "bodily injury" or "property damage" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying".
. . . .
However, "uninsured motor vehicle" does not include any vehicle:
(1) Owned by, or furnished or available for the regular use of you or any "family member";
(2) Owned or operated by a self-insurer under any applicable motor vehicle law, except as a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;
(3) Owned by a governmental unit or agency;
(4) Designed for use mainly off public roads while not on public roads; or
(5) While located for use as a premises.

Next, Thurman raises on a cross-appeal the issue of whether the trial court erred when it determined that pre-judgment interest on the damage award was appropriate, provided it did not increase the award over and above the limit stated in the insurance policy for uninsured/underinsured motorist coverage minus the amount of the $50,000.00 settlement received in behalf of Justin Harkins, Andrew Keon, and James Keon. The parties do not appear to argue whether the award of pre-judgment interest is equitable, but rather, whether the insurance policy permits an award of pre-judgment interest such that the total award exceeds the policy limit. As such, we are presented with a question of law and our scope of review is *de novo* with no presumption of correctness accompanying the trial court's conclusions of law. *Malone v. Maddox*, No. E2002-01403-COA-R3-CV, 2003 Tenn. App. LEXIS 147, at *11 (Tenn. Ct. App. Feb. 25, 2003) (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)) (*no app. filed*).

In this case, the insurance policy, as noted above, contains a provision limiting the amount Great River owes the insured: "[t]he most we will pay for *all damages* resulting from 'bodily injury' to an 'insured' when the 'insured' is 'occupying' an 'auto' not owned by the insured, or is not 'occupying' any 'auto', is the highest limit of uninsured motorists coverage on an 'auto' owned by the 'insured'." (emphasis added). The policy contains an additional provision limiting the amount Great River is obligated to pay: "[r]egardless of the number of covered 'autos', 'insureds', premiums paid, claims made or vehicles involved in the 'accident', the most we will pay for *all damages* is the limit of UNINSURED MOTORISTS COVERAGE shown in the schedule." (emphasis added). These limits are very similar to those at issue in *Malone v. Maddox* wherein this Court addressed this same issue. *Malone*, 2003 Tenn. App. LEXIS 147, at *8.

As this Court previously noted, pre-judgment interest is "an element of, or in the nature of, damages." Tenn. Code Ann. § 47-14-123 (2001); *Malone*, 2003 Tenn. App. LEXIS 147, at *16. Because the policy on its face limits the amount Great River is required to pay for "all damages" in the event the uninsured/underinsured motorist coverage is triggered and pre-judgment interest is an element of damages, pre-judgment interest is encompassed by the limiting language of the policy. *See Malone*, 2003 Tenn. App. LEXIS 147, at *16. As stated by this Court in *Malone*, "'all damages' means just that, all damages, and, by statute, prejudgment interest is an element of the injured party's damages." *Id*. at *17.

Thurman additionally directs this Court's attention to decisions of other jurisdictions wherein the courts of those states contend that, if pre-judgment interest were prohibited from increasing the amount of the judgment above the policy limit, such a position would discourage an insurance company from settlement and encourage protracted litigation during which the insured is deprived of the use of funds to which he or she is entitled. *See Cox v. Peerless Ins. Co.*, 774 F. Supp. 83, 86-87 (D. Conn. 1991); *Peterman v. State Farm Mut. Auto. Ins. Co.*, 8 P.3d 549, 553 (Colo. Ct. App. 2000); *Miller v. Gunckle*, 775 N.E.2d 475, 481 (Ohio 2002); *Potomac Ins. Co. v. Howard*, 813 S.W.2d 557, 558 (Tex. App. 1991). However, this Court previously addressed this argument in *Malone*, stating:

In general terms, an insurance company has an incentive to settle [an uninsured motorist] claim with merit in order to eliminate the possibility of a damage award that includes prejudgment interest. When the value of [an uninsured motorist] claim arguably exceeds the [uninsured motorist] limit of coverage, the insurance company still has motivation to settle for a number of reasons, not the least of which is fear of the imposition of a bad faith penalty under Tenn. Code Ann. § 56-7-105 (2000). In any event, we hold that the conclusion reached by the trial court with respect to prejudgment interest does not violate an established public policy of this state.

*Malone*, 2003 Tenn. App. LEXIS 147, at *17-18 (footnote omitted). For all these reasons, we hold that the trial court did not err when it "capped" the amount of damages, including pre-judgment interest, pursuant to the limit stated in the policy.

### Conclusion

For the reasons stated above, we affirm. Costs of this appeal are taxed equally to the Appellee, Justin Thurman, and Appellant, Great River Insurance Company, and its surety for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE